**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**AIKEN DIVISION**

| | |
|---|---|
| Maria Taylor, individually and as parent and natural guardian of M.T., a minor under the age of fourteen,<br><br>Plaintiff,<br><br>vs.<br><br>Limestone Charter Association, Horse Creek Academy, Ann Marie Taylor, Ivey Savage, and Tanya Tobias,<br><br>Defendants. | Civil Action No.: 1:26-cv-03102-SAC-TER<br><br>**AMENDED COMPLAINT**<br>**(Jury Trial Demanded)** |

The Plaintiff would respectfully show unto the Court as follows:

**PARTIES, VENUE, AND JURISDICTION**

1. Plaintiff Maria Taylor (hereinafter "Plaintiff") is the mother and natural guardian of M.T., a minor child under the age of fourteen who has Down syndrome and who is referred to herein by her initials pursuant to Rule 5.2(a) of the Federal Rules of Civil Procedure.

2. Plaintiff brings this action individually and on behalf of M.T. She is a citizen and resident of Ridge Spring, South Carolina, and from September 2022 until December 30, 2023, she was employed by HCA as a special education teaching assistant.

3. Defendant Horse Creek Academy (hereinafter "HCA") is a public charter school organized as a South Carolina nonprofit corporation under the South Carolina Charter Schools Act of 1996, S.C. Code Ann. § 59-40-10 et seq., located at 1200 Toolebeck Road, Aiken, South Carolina.

4. HCA is considered a school district for purposes of tort liability, S.C. Code Ann. § 59-40-50(B)(4), and is therefore a political subdivision and a governmental entity within the meaning of the South Carolina Tort Claims Act, S.C. Code Ann. § 15-78-30(d), (h). At all times

relevant, HCA had care, custody, and control of the students and staff of its elementary self-contained special education classrooms.

5. HCA is not an arm of the State of South Carolina. It is governed by its own board of directors, at least half of whose members are elected by its employees and the parents of its students, S.C. Code Ann. § 59-40-50(B)(9), and no state officer or agency appoints its board or, upon information and belief, reviews its decisions concerning its employees, its classrooms, or reports that a student has been mistreated.

6. HCA may sue and be sued, assumes liability for its own activities, must indemnify its sponsor against any judgment arising from its acts, obtains its own liability insurance, and is represented by private counsel rather than the Attorney General. S.C. Code Ann. §§ 59-40-60(F)(15), (16), 59-40-190(A). Its sponsor is not liable for its debts, S.C. Code Ann. § 59-40-190(B), and a judgment against HCA would be paid from HCA's own funds and insurance and not from the state treasury.

7. HCA operates a single school in Aiken County, and South Carolina law classifies school districts as political subdivisions rather than agencies of the State. S.C. Code Ann. § 15-78-30(a), (e), (h).

8. HCA is a public entity within the meaning of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131(1)(B). It is a public school for purposes of state law, S.C. Code Ann. § 59-40-40(2)(a), and a school within its sponsor's Local Education Agency, S.C. Code Ann. § 59-40-40(4). Its operation is a program or activity receiving federal financial assistance within the meaning of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a) and (b)(2)(B), including, upon information and belief, funds made available under the Individuals with Disabilities Education Act.

9. Defendant Limestone Charter Association (hereinafter "Limestone"), with offices at 1115 College Drive, Gaffney, South Carolina, sponsored HCA under the Charter Schools Act and held HCA's charter at all times relevant. The sponsor of a charter school is its Local Education Agency and "retains responsibility for special education and shall ensure that students enrolled in its charter schools are served in a manner consistent with LEA obligations under applicable federal, state, and local law." S.C. Code Ann. § 59-40-40(4).

10. Upon information and belief, Limestone is a public entity within the meaning of 42 U.S.C. § 12131(1)(B), and, as the Local Education Agency that receives and distributes the federal financial assistance through which special education is provided to the students of its charter schools, including M.T., it is a program or activity receiving federal financial assistance within the meaning of 29 U.S.C. § 794(a) and (b)(1)(B).

11. Defendant Ann Marie Taylor (hereinafter "Dr. Taylor"), who is not related to Plaintiff, was at all times relevant HCA's Executive Director and school leader, S.C. Code Ann. § 59-40-50(B)(6), and, upon information and belief, the official to whom HCA's board has delegated final authority to establish HCA's policy with respect to the hiring, discipline, assignment, leave, and separation of HCA employees, the practices permitted in HCA's classrooms, and the response to reports that a student has been mistreated. Upon information and belief, she is a citizen and resident of Aiken County, South Carolina.

12. Defendant Ivey Savage (hereinafter "Savage") was at all times relevant employed by HCA as the special education teacher in charge of the elementary self-contained classroom in which M.T. was enrolled during the 2023-2024 school year. Upon information and belief, she is a citizen and resident of Aiken County, South Carolina.

13. Defendant Tanya Tobias (hereinafter "Tobias") was at all times relevant employed by HCA as a teacher's aide and was working in Savage's classroom on October 6, 2023. Upon information and belief, each is a citizen and resident of Aiken County, South Carolina.

14. This Court has subject matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. §§ 1331 and 1343 and supplemental jurisdiction over her state law claims under 28 U.S.C. § 1367(a). Venue is proper in this Court and in the Aiken Division under 28 U.S.C. § 1391(b) because all Defendants reside in this District and the events giving rise to the claims occurred at HCA in Aiken County, South Carolina.

15. This Amended Complaint supersedes the Complaint filed without counsel on July 30, 2026 (ECF No. 1) and the proposed amendment attached to the Motion to Amend (ECF No. 6). Cory Taylor asserts no claim herein, and Plaintiff does not assert claims against Mary Vigneri, Erica Goodwin, Joanna Eichelberger, Marti Anderson, Molly Campbell, or Ashley Reeves.

## **FACTUAL BACKGROUND**

16. The previous paragraphs are incorporated by reference as if repeated verbatim herein.

17. M.T. was six years old when the 2023-2024 school year began on August 8, 2023, and she turned seven later that month. HCA enrolled her in a self-contained special education classroom taught by Savage pursuant to an Individualized Education Program (hereinafter "IEP") developed on June 6, 2023 and amended on September 13, 2023.

18. HCA's IEP identifies M.T.'s primary area of disability as developmental delay and her secondary area as speech and language impairment. It states that M.T. has difficulty using sentences to communicate, is not easily understood by unfamiliar adults and peers, relies on picture cards and a speech generating device, and, when given a task she does not want to do, will tell her teachers no.

19. HCA therefore knew that M.T. could not describe to her parents, or to any adult who did not know her, what an adult did to her at school.

20. Savage's written expectations for the aides in her room instructed them to bring problems to Savage first and to "refrain from going outside our classroom to other teachers/staff to talk about things you do not agree with (This is not professional)." The classroom "Norms" posted for the year included "Our room, our business."

21. The HCA administrators and staff referred to below held the following positions at all times relevant: Marti Anderson (hereinafter "Anderson"), Human Resources Director; Joanna Eichelberger (hereinafter "Eichelberger"), Special Programs Director; Erica Goodwin (hereinafter "Goodwin"), Elementary Lead; Ashley Reeves (hereinafter "Reeves"), lead for teaching assistants; Mary Vigneri (hereinafter "Vigneri"), occupational therapist; and Molly Campbell (hereinafter "Campbell"), counselor and behavior support on HCA's discipline team.

22. For the 2023-2024 school year HCA assigned Plaintiff, as a teaching assistant, to Savage's classroom, the same classroom in which HCA had placed her daughter. The other adults regularly assigned to the room included aides Sherry Martin Scott, Heather Singletary, and Cheryl Smith (hereinafter "Smith").

23. In August 2023, within weeks of the start of the school year, Savage told M.T. to go to the bathroom. M.T. said no and sat down on the floor. Savage then took hold of M.T. and physically dragged her body across the floor from the play area to the classroom bathroom while M.T. struggled to get free.

24. M.T. was so upset that she pulled her own shirt off on the bathroom floor, and she came out of the bathroom crying, with her shirt on inside out and backward and with dirt from the floor on it.

25. Before this incident occurred, M.T.'s behavior did not create an emergency and M.T. did not pose a threat of harm to anyone.

26. During the week of August 23, 2023, when M.T. began crying at the instruction table, Savage slammed M.T.'s book on the table in front of her and told her, "you need to stop this now." Savage later told Plaintiff that she "was just trying to scare her to get her attention."

27. On September 14, 2023, as the class lined up to go to specials, M.T. refused to go to the bathroom, sat down on the floor, and said no when Savage told her to get up. Savage then forcefully grabbed M.T. by the ankle area of both legs and dragged her across the floor to the bathroom while M.T. yelled "No No" and cried.

28. Before this incident occurred, M.T.'s behavior did not create an emergency and M.T. did not pose a threat of harm to anyone.

29. The same day, Plaintiff sent Savage a text message, as M.T.'s mother, asking that Savage not drag M.T. on the floor any more, and she reported to Vigneri, Goodwin, Eichelberger, and Reeves that Savage had forcefully dragged M.T. across the floor by her legs and that it was the second time, and she asked to be pulled out of Savage's room.

30. The next school day, Eichelberger directed Plaintiff to report to Savage's room as before. None of Eichelberger, Goodwin, Reeves, or Vigneri removed Savage from the classroom, removed M.T. from Savage's care, investigated, documented, or reported the dragging, or took any other action.

31. On September 27, 2023, Plaintiff told Dr. Taylor that Savage had been pulling M.T. Dr. Taylor took no action.

32. On September 28, 2023, Plaintiff met with Campbell, with Savage present, told Campbell that Savage had been pulling M.T. and that she was concerned for M.T.'s safety in Savage's classroom, and asked that M.T. not be placed back in Savage's class. Campbell assured

her that it would not happen again and told Savage not to put her hands on M.T. and to call for behavior support instead.

33. By September 28, 2023, then, six HCA administrators and staff, including its Executive Director, had received Plaintiff's reports that Savage had been pulling M.T. HCA did not remove Savage, investigate or report the incidents, retrain Savage, or adopt any rule on when an adult may put hands on a child.

34. Instead, on October 6, 2023, HCA placed M.T. back into Savage's classroom.

35. On the morning of October 6, 2023, M.T., who had colored most of her sheet to her ability, said no when Tobias told her to color. Savage walked over, and Tobias and Savage forced M.T. to color. M.T. became upset and pushed her paper to the floor.

36. Tobias and Savage then each forcefully pushed M.T.'s back down, forcing her toward and down to the floor to make her pick up the paper. Smith saw Tobias push M.T. toward the floor and Savage join in.

37. Before this incident occurred, M.T.'s behavior did not create an emergency and M.T. did not pose a threat of harm to anyone.

38. Smith left the classroom and told Plaintiff what she had seen. Plaintiff called Cory Taylor, M.T.'s father, who came to the school and checked M.T. out of class for the day, and Plaintiff reported the incident to Campbell and to Anderson.

39. On October 13 and 14, 2023, Cory Taylor asked Eichelberger in writing that M.T. be moved out of Savage's room at least temporarily. Eichelberger replied, copying Dr. Taylor, that HCA's plan was for M.T. to remain in her current classroom, and Dr. Taylor added that "[t]he other option is the local county schools. We are a school of choice and there are many options for her in Aiken County."

40. Only after Cory Taylor insisted that his nonverbal child be kept safe "until the accusations have been investigated and resolved" did Eichelberger agree, on October 15, 2023, to move M.T. to a different classroom "while the matter is investigated."

41. On October 15 and 16, 2023, Smith and Plaintiff each submitted to HCA a written statement: Smith's describing what she had seen on October 6, 2023, and Plaintiff's describing the August 2023 dragging, the book slamming, the September 14, 2023 dragging by the ankles, and what Smith had told her about October 6, 2023.

42. Instead of acting on those statements, Dr. Taylor met with Smith on October 16 and 17, 2023 and asked her to revise her statement, which Smith refused to do.

43. On or about October 23, 2023, Dr. Taylor asked Smith to sign a document titled "Settlement Agreement and General Release," under which Smith would release HCA and its directors, board members, agents, and employees from all claims under State or federal law, including claims under 42 U.S.C. § 1983 and the Americans with Disabilities Act, relating to her employment with HCA or her separation from it.

44. The proposed release contained a provision governing Smith's "statements on social media, by telephone, in person, or in any other forum," and required her "to maintain the terms of this Agreement in the strictest confidence," on pain that if she breached that provision "she will repay the amounts paid to her under this Agreement, plus interest computed at the legal rate prevailing in the State of South Carolina, plus damages, costs, and attorney's fees incurred by HCA in enforcing the provisions of this paragraph."

45. The proposed release further provided that "Ms. Smith waives any right to a hearing or appearance before the HCA Board of Directors with respect to all matters released herein" and that "Ms. Smith agrees not to reapply for employment with HCA in the future."

46. HCA thus sought to secure the silence of the only employee who had reported the October 6, 2023, incident, and her waiver of any hearing before HCA's Board, before any external investigation of her report had been conducted. Smith declined to sign.

47. On October 23, 2023, Dr. Taylor terminated Smith's employment by letter that described what Smith had seen as teachers using "hand over hand" and "a physical cue of a hand on a student's back" to prompt M.T. to pick up a piece of paper, faulted Smith for telling M.T.'s mother and colleague what she had seen rather than taking it up HCA's chain of command, and called her handling of the situation "unacceptable and unprofessional."

48. Upon information and belief, HCA has never disciplined Savage or Tobias, Savage has since been promoted within HCA's special education program, no HCA employee reported any of the three incidents to law enforcement or to the South Carolina Department of Social Services (hereinafter "DSS"), and HCA's only investigation was an internal one that punished those who reported the abuse.

49. On October 19, 2023, Dr. Taylor wrote to Plaintiff and Cory Taylor that Angel Malone, the Superintendent of Limestone, had called her that day to report anonymous calls that a lawsuit was going to be filed against HCA for mistreatment of students in its special education classroom, and that "[g]iven the nature of the calls received today" she was canceling the parent meeting the Taylors had requested for the next day.

50. The same day, Dr. Taylor placed Plaintiff on administrative leave by letter stating that the action was being taken "because there have been recent allegations made regarding mistreatment of your daughter by Horse Creek Academy employees and we would prefer to have the matter fully investigated and solved prior to you returning to work."

51. The letter barred Plaintiff from the campus except to use the car line and ordered that she was "not to have any contact with current and past employees, students, school board

members or parents associated with Horse Creek Academy, whether initiated by you or by them, until such time as our investigation is completed (including in person, electronic communication, telephone calls, or other communications)," despite the fact that her daughter, M.T., was still enrolled at the school.

52. No HCA employee other than Plaintiff, the mother who had reported the abuse, and Smith, the aide who had reported it, was placed on leave or separated. Savage and Tobias remained in the classroom.

53. On October 27, 2023, the Taylors' then counsel submitted a written claim under the South Carolina Tort Claims Act to HCA, Limestone, and the South Carolina Department of Education describing the three incidents and the retaliation against Plaintiff. HCA's counsel acknowledged receipt on October 31, 2023, copying the Chairperson of HCA's board, and HCA did not allow the claim within one hundred eighty days.

54. On October 31, 2023, Dr. Taylor and Anderson met with Plaintiff, and Dr. Taylor's written summary of the meeting states that HCA would bring Plaintiff back to work in our office as a support person, not to her position as a special education teaching assistant in the elementary building.

55. Plaintiff took approved leave under the Family and Medical Leave Act from November 1 through December 31, 2023, during which HCA paid her nothing, and on December 30, 2023, she resigned rather than return to an employer that had kept the responsible employees in the classroom, fired the aide who reported them, placed her under a no-contact order, and removed her from her classroom.

56. Since the fall of 2023, Plaintiff has suffered severe emotional distress with physical symptoms, for which she has been under the care of her physician and a licensed professional counselor, and she has lost wages and employment benefits.

57. On February 6, 2024, DSS received and referred to the Aiken County Sheriff's Office a report that an aide in an HCA self-contained special education classroom had, on more than one occasion, pulled a seven-year-old nonverbal autistic student across the room by her wrists while "[t]he main teacher and other aide in the room observe [the aide's] behaviors with [the child] and do not intervene."

58. At all times relevant, HCA had no written policy governing the use of physical force, restraint, escort, or prompting on students in its self-contained special education classrooms, no policy requiring that any use of force on a student be documented or reported to administration or to the parent, and, upon information and belief, no cameras in those classrooms.

59. Upon information and belief, HCA provided no training to Savage, Tobias, or the other adults in its elementary self-contained classroom on the use of physical force, on de-escalation and alternatives to physical intervention, or on the recognition and reporting of abuse of a child who cannot report it herself, and, upon information and belief, no administrator regularly observed that classroom.

60. Upon information and belief, HCA's board, with knowledge of the allegations concerning M.T. and of the actions taken against Smith and Plaintiff, took no vote and gave no direction to reverse any of those actions, to investigate the force used on M.T., to adopt a rule governing physical force, or to train the adults in HCA's self-contained classrooms, and left each decision in place.

**FOR A FIRST CAUSE OF ACTION**
**AGAINST DEFENDANT HORSE CREEK ACADEMY**
**(Gross Negligence, S.C. Code Ann. § 15-78-10 et seq.)**

61. The previous paragraphs are incorporated by reference as if repeated verbatim herein.

62. HCA is a governmental entity liable for its torts in the same manner and to the same extent as a private individual under like circumstances, S.C. Code Ann. § 15-78-40, and its responsibility for the supervision, protection, control, and custody of M.T., a student in its care, is a duty for which it is liable when the duty is exercised in a grossly negligent manner, whether by HCA itself or by its employees acting within the scope of their official duties. S.C. Code Ann. §§ 15-78-60(25), 15-78-70(a).

63. HCA is a political subdivision and not an arm of the State and has no Eleventh Amendment immunity from this claim.

64. HCA owed M.T., a duty to supervise and train the adults it placed in a self-contained classroom with nonverbal children, to protect her from physical abuse by its employees, to investigate and act on reports that an adult had used force on her, and to separate her from a teacher reported to have dragged her across the floor until the report was investigated.

65. HCA breached those duties in a grossly negligent manner. Its conduct was the conscious failure to do something which it was incumbent upon HCA to do and the doing of things intentionally that HCA ought not to have done, and it was a failure to exercise slight care, in the following particulars:

a. in placing adults it had not trained in the use of force, de-escalation, or alternatives to physical intervention, and whom it did not supervise, in physical control of M.T. and other nonverbal disabled children whom HCA knew would refuse tasks and sit on the floor;

b. in failing to investigate, document, or act on the August 2023 and September 14, 2023 incidents after HCA employees witnessed them and M.T.'s mother reported them on September 14, 27, and 28, 2023;

c. in returning M.T. to Savage's classroom on October 6, 2023 without removing Savage, investigating, or taking any protective measure, conduct that exhibited a conscious indifference to the threat Savage posed to M.T.; and

d. in failing to protect M.T. from the force used on her on October 6, 2023.

66. HCA's decisions to leave Savage in charge of M.T.'s classroom and to return M.T. to it were not the product of any weighing of alternatives using accepted professional standards for the supervision and protection of nonverbal children with disabilities, and to the extent those decisions involved HCA's discretion or judgment, HCA exercised that discretion in a grossly negligent manner.

67. Savage and Tobias, as HCA's employees performing their official duties, exercised HCA's responsibility for the supervision, protection, control, and custody of M.T. in a grossly negligent manner, without slight care, when Savage dragged M.T. across the floor in August 2023 and on September 14, 2023 and when Savage and Tobias forced M.T. to the floor on October 6, 2023, each time without any emergency, threat, or legitimate need. HCA is vicariously liable for their gross negligence.

68. HCA's gross negligence was a direct and proximate cause, and at least one of the proximate causes, of each of the three uses of force on M.T.

69. Each was a natural and probable consequence of HCA's conduct; after the reports of September 14, 27, and 28, 2023, HCA should have foreseen that returning M.T. to Savage's classroom would probably cause the very injury that occurred on October 6, 2023.

70. Had HCA removed Savage, removed M.T., investigated, or supervised the adults in the room, the force used on September 14 and October 6, 2023 would not have occurred.

71. Each of the three uses of force was a separate occurrence within the meaning of S.C. Code Ann. §§ 15-78-30(g) and 15-78-120, because each proximately flowed from a distinct act of negligence by HCA.

72. As a direct and proximate result, M.T. suffered physical pain, fear, humiliation, emotional trauma and distress, mental anguish, regression in her behavior, toileting, and acquired skills, and loss of enjoyment of life, and she will require counseling and other care, and Plaintiff,

individually, has incurred and will incur expenses for M.T.'s care and has suffered the loss of M.T.'s services.

73. Plaintiff is informed and believes that she, individually and on M.T.'s behalf, is entitled to judgment against HCA for actual damages in an amount to be determined by a jury, within the limits of S.C. Code Ann. § 15-78-120, for each of the three occurrences.

**FOR A SECOND CAUSE OF ACTION**
**AGAINST DEFENDANT HORSE CREEK ACADEMY**
**(Grossly Negligent Supervision and Retention, S.C. Code Ann. § 15-78-10 et seq.)**

74. The previous paragraphs are incorporated by reference as if repeated verbatim herein.

75. Savage and Tobias used physical force on M.T. while upon HCA's premises and using HCA's classroom, and HCA, which had the ability to control, discipline, and remove them, knew or should have known of the necessity and opportunity for exercising that control.

76. This claim rests on HCA's own gross negligence, is direct rather than derivative, and does not depend on whether Savage or Tobias acted within the scope of her employment.

77. HCA knew, through its employees who witnessed the August 2023 and September 14, 2023 incidents and through Plaintiff's reports of September 14, 27, and 28, 2023, that Savage had twice dragged a disabled child of six and seven across the floor.

78. That prior conduct put HCA on notice that Savage was in the habit of misconducting herself in a manner dangerous to the children in her care, and it had a direct nexus to the force used on October 6, 2023: the same classroom, the same teacher, the same child, and the same method of compelling compliance by force.

79. HCA breached its duty to supervise Savage and Tobias, and its duty not to retain Savage, in a grossly negligent manner and without slight care, by failing to supervise, monitor, or observe the adults in that classroom, by retaining Savage as M.T.'s teacher and returning M.T. to

her classroom after M.T.'s mother had asked that M.T. not be placed back in it, and by failing to counsel, retrain, discipline, reassign, or remove Savage.

80. Harm to M.T. from retaining Savage in unsupervised control of her was foreseeable, and HCA's grossly negligent supervision and retention was a direct and proximate cause of the force used on M.T. on October 6, 2023 and of the injuries and damages described above.

81. Plaintiff is informed and believes that she, individually and on M.T.'s behalf, is entitled to judgment against HCA for actual damages in an amount to be determined by a jury, within the limits of S.C. Code Ann. § 15-78-120.

**FOR A THIRD CAUSE OF ACTION**
**AGAINST DEFENDANTS SAVAGE AND TOBIAS**
**(42 U.S.C. § 1983: Violation of the Fourteenth Amendment and, in the Alternative, the Fourth Amendment)**

82. The previous paragraphs are incorporated by reference as if repeated verbatim herein.

83. This cause of action is brought on M.T.'s behalf against Savage and Tobias in their individual capacities. Each was an employee of a public school, S.C. Code Ann. § 59-40-40(2)(a), acting under color of state law, and each used the authority of her position over the children in HCA's self-contained classroom to do the acts described above.

84. M.T. had a clearly established right under the Due Process Clause of the Fourteenth Amendment to be free from excessive physical force by school employees.

85. The force Savage and Tobias used on M.T. on October 6, 2023 served no legitimate educational purpose, was out of all proportion to any need presented by a nonverbal six-year-old who had not picked up a piece of paper, and was intended to hurt her rather than to teach or control her.

86. That force caused M.T. physical injury and lasting emotional harm, and it violated her right to bodily security under the Fourteenth Amendment.

87. Savage violated that right when she dragged M.T. across the floor in August 2023, when she dragged M.T. across the floor by both ankles on September 14, 2023, and when she joined Tobias in forcing M.T. to the floor on October 6, 2023. Tobias violated that right on October 6, 2023 when she pushed M.T. toward and down to the floor.

88. In the alternative, each dragging and the forcing of M.T. to the floor was an unjustified restraint of M.T.'s freedom of movement by physical force and therefore a seizure of her person within the meaning of the Fourth Amendment, as incorporated to the States through the Fourteenth Amendment, and each was objectively unreasonable in light of the facts and circumstances confronting Savage and Tobias, because M.T. had committed no offense, posed no threat, was not resisting by force or attempting to flee, and was a small child in an elementary special education classroom.

89. No reasonable school employee could have believed that dragging a child of six or seven with Down syndrome across a floor by her ankles, or forcing her to the floor to make her pick up a piece of paper, was lawful.

90. As a direct and proximate result, M.T. suffered the injuries and damages described above.

91. The conduct of Savage and Tobias involved reckless or callous indifference to M.T.'s federally protected rights, and Plaintiff is informed and believes that M.T. is entitled to judgment against Savage and Tobias for compensatory and punitive damages in amounts to be determined by a jury, together with attorney's fees and costs under 42 U.S.C. § 1988.

**FOR A FOURTH CAUSE OF ACTION**
**AGAINST DEFENDANT ANN MARIE TAYLOR**
**(42 U.S.C. § 1983: Supervisory Liability, Fourteenth Amendment)**

92. The previous paragraphs are incorporated by reference as if repeated verbatim herein.

93. This cause of action is brought on M.T.'s behalf against Dr. Taylor in her individual capacity. Dr. Taylor acted under color of state law and, as HCA's Executive Director, held supervisory authority over every adult in HCA's elementary self-contained classroom and over the placement of M.T., with the authority to remove Savage, reassign M.T., investigate, discipline, retrain, or monitor Savage, and direct the adults in the classroom not to use force on M.T.

94. Before October 6, 2023, Dr. Taylor had actual and constructive knowledge that Savage was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to M.T. and the other nonverbal children in Savage's classroom.

95. Dr. Taylor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of Savage's conduct.

96. There is an affirmative causal link between Dr. Taylor's inaction and the constitutional injury M.T. suffered on October 6, 2023, when Savage and Tobias forced her to the floor in the same classroom.

97. That injury was the natural consequence of Dr. Taylor's inaction, and had she removed Savage, removed M.T., or imposed and enforced a prohibition on force, it would not have occurred.

98. Her conduct after October 6, 2023, including retaining Savage and Tobias, describing the force as an accepted technique, terminating the aide who reported it, and placing M.T.'s mother on leave, shows that her inaction reflected tacit authorization rather than oversight.

99. No reasonable school administrator possessing the information Dr. Taylor possessed on September 27, 2023 could have believed it lawful to leave that child in that teacher's custody and do nothing.

100. As a direct and proximate result, M.T. suffered the injuries and damages described above. Dr. Taylor's conduct involved reckless or callous indifference to M.T.'s federally protected

rights, and Plaintiff is informed and believes that M.T. is entitled to judgment against Dr. Taylor for compensatory and punitive damages in amounts to be determined by a jury, together with attorney's fees and costs under 42 U.S.C. § 1988.

**FOR A FIFTH CAUSE OF ACTION**
**AGAINST DEFENDANT HORSE CREEK ACADEMY**
**(42 U.S.C. § 1983: Municipal Liability for Violation of the Fourteenth Amendment)**

101. The previous paragraphs are incorporated by reference as if repeated verbatim herein.

102. HCA is a "person" subject to suit under 42 U.S.C. § 1983 within the meaning of Monell v. Department of Social Services, 436 U.S. 658 (1978), and it is liable for the violations of M.T.'s Fourteenth Amendment rights described in the Third Cause of Action because those violations resulted from an express policy of HCA, the decisions of a person with final policymaking authority, a failure to train and supervise that manifests deliberate indifference to the rights of HCA's students, and a practice so persistent and widespread as to constitute a custom with the force of law.

103. As to express policy, HCA adopted no rule limiting the physical force that the adults it assigned to the hands-on management of nonverbal disabled children could use, and the only written direction those adults received about their conduct in the classroom was the set of expectations and norms described above, which told them to keep what happened in the room inside the room.

104. Upon information and belief, HCA's Executive Director knew of those expectations and norms, permitted their use, and enforced them by terminating the one aide who took a report to a parent, and on October 23, 2023, she stated in writing that "hand over hand" force and "a physical cue of a hand on a student's back" are accepted techniques in that classroom and that an

employee who reports such force to a parent rather than up the chain of command may be terminated.

105. As to the decisions of a final policymaker, the Charter Schools Act provides for HCA to be governed by a board of directors, S.C. Code Ann. § 59-40-50(B)(9), and, upon information and belief, HCA's board, through its bylaws and board policies and by a continued course of knowing acquiescence, delegated to the Executive Director final authority to establish HCA's policy with respect to the discipline, assignment, leave, and separation of HCA's employees, the practices permitted in HCA's classrooms, and the response to reports that a student had been mistreated, and did not review, approve, or reverse any of the decisions described herein before they took effect.

106. Dr. Taylor, exercising that authority, made the following deliberate choices from among available alternatives that included removing Savage, removing M.T., investigating, retraining Savage, prohibiting the conduct in writing, and reporting it to DSS or law enforcement: on September 27, 2023, she chose to do nothing and to leave M.T. in Savage's classroom; after receiving the written statements of Smith and Plaintiff, she chose to retain Savage and Tobias, to describe the force as an accepted technique, and to make no report; and she chose to terminate the aide who reported the force and to place M.T.'s mother on leave under a no-contact order.

107. Each choice set HCA's rule for its self-contained classrooms. In the alternative, HCA's board, with knowledge of those decisions and the reasons given for them, left them in place and adopted them as HCA's own.

108. As to custom, HCA's practices of using physical force to compel compliance from nonverbal disabled children in its self-contained classrooms and of taking no action when such force was reported were persistent and well settled.

109. As to training and supervision, HCA assigned to the adults in its self-contained classroom the daily hands-on management, toileting, and physical direction of nonverbal children who could not report mistreatment.

110. HCA gave those adults no training on when physical contact with such a child is and is not permitted, on de-escalation, or on reporting suspected abuse of a child who cannot report it, and did not supervise them.

111. The need for that training and supervision was so obvious, and its absence so likely to result in the violation of the children's right to bodily security, that HCA's policymakers were deliberately indifferent to the need, and HCA's continued adherence to no rule, no training, and no supervision after Plaintiff's September 2023 reports, which showed that the absence of training had already failed to prevent force on M.T., was a deliberate choice that led directly to the October 6, 2023 force.

112. Through its deliberate conduct, HCA was the moving force behind the violations of M.T.'s rights. Its absence of any rule on force, its failure to train and supervise, and its policy of keeping what happened in the classroom inside the classroom created the conditions in which force was used on M.T. in August and September 2023 without being reported by anyone but her mother.

113. Dr. Taylor's decision to leave M.T. with Savage after the September reports directly caused the October 6, 2023 force, which would not have occurred had HCA removed Savage, removed M.T., or prohibited the conduct; and HCA's policies and customs communicated to the adults in that classroom that force on a nonverbal child was accepted and that reporting it was not.

114. As a direct and proximate result, M.T. suffered the injuries and damages described above, and Plaintiff is informed and believes that M.T. is entitled to judgment against HCA for compensatory damages in an amount to be determined by a jury, together with attorney's fees and costs under 42 U.S.C. § 1988.

**FOR A SIXTH CAUSE OF ACTION**
**AGAINST DEFENDANTS HORSE CREEK ACADEMY AND**
**LIMESTONE CHARTER ASSOCIATION**
**(Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq., and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794)**

115. The previous paragraphs are incorporated by reference as if repeated verbatim herein. The allegations concerning M.T.'s IEP are incorporated solely as evidence of what HCA knew about M.T.'s disabilities and vulnerability and not as the basis of any claim.

116. HCA is a public entity, and upon information and belief Limestone is a public entity, within the meaning of 42 U.S.C. § 12131(1)(B), and the operation of HCA, and Limestone's distribution of federal assistance to it, are programs or activities receiving federal financial assistance within the meaning of 29 U.S.C. § 794(b).

117. HCA is subject to all federal laws prohibiting discrimination on the basis of disability, S.C. Code Ann. § 59-40-40(2)(b), and Limestone, as the Local Education Agency, must ensure that students enrolled in its charter schools are served consistently with its obligations under federal law, S.C. Code Ann. § 59-40-40(4).

118. M.T.'s Down syndrome, developmental delay, and speech and language impairment substantially limit major life activities, including speaking, communicating, learning, and caring for herself. She is a qualified individual with a disability within the meaning of 42 U.S.C. § 12131(2) and an otherwise qualified individual with a disability within the meaning of 29 U.S.C. § 794(a), because with or without reasonable modifications she meets the essential eligibility requirements for the services, programs, and activities HCA provides, in which she was enrolled at all times relevant.

119. M.T. was, by reason of her disability within the meaning of 42 U.S.C. § 12132 and solely by reason of her disability within the meaning of 29 U.S.C. § 794(a), denied the benefits of

HCA's services, programs, and activities, including the safe custody during the school day that HCA provides to its students who are not disabled, and subjected to discrimination.

120. HCA knew that because of her disability she could not report to her parents any mistreatment she suffered and HCA provided the children in that classroom none of the safeguards against mistreatment that it provides to children who can report, including a rule on the use of force, training, supervision, reporting requirements, and cameras.

121. Savage and Tobias used force on her to compel compliance because of behaviors that are manifestations of her disability, so that she would not have been subjected to that force but for her disability.

122. Rather than accommodating her safely, when her parents asked that she be moved, HCA's Executive Director told them that the alternative was "the local county schools."

123. HCA engaged in intentional discrimination against M.T. by acting with deliberate indifference.

124. Limestone is liable because, as the Local Education Agency that retained responsibility for M.T.'s special education, it delivered that program to M.T., that subjected her to physical and mental harm resulting from ordinary behaviors caused by her disability.

125. As a direct and proximate result, M.T. suffered physical injury and pain and the need for counseling and other care, and Plaintiff has incurred and will incur expenses for that care. Plaintiff is informed and believes that M.T. is entitled to judgment against HCA and Limestone for compensatory damages in an amount to be determined by a jury, together with attorney's fees and costs under 42 U.S.C. § 12205 and 29 U.S.C. § 794a(b).

## FOR A SEVENTH CAUSE OF ACTION AGAINST DEFENDANTS HORSE CREEK ACADEMY AND ANN MARIE TAYLOR

**(42 U.S.C. § 1983: Retaliation in Violation of the First Amendment)**

126. The previous paragraphs are incorporated by reference as if repeated verbatim herein.

127. This cause of action is brought by Plaintiff individually against HCA and Dr. Taylor, each of whom acted under color of state law.

128. Plaintiff engaged in speech and petitioning protected by the First Amendment when, as M.T.'s mother and as a citizen, and not pursuant to any duty of her employment, Plaintiff:

a. asked Savage in writing on September 14, 2023 to stop dragging her child;

b. reported the dragging that day to four HCA administrators and staff;

c. told Dr. Taylor on September 27 and Campbell on September 28, 2023 that Savage had been pulling M.T. and asked that M.T. be kept out of Savage's custody;

d. reported the October 6, 2023 incident to Campbell and Anderson and gave HCA a written statement on October 16, 2023;

e. joined her husband in asking HCA in writing that M.T. be kept out of the custody of the employees who had used force on her until the reports were investigated;

f. and retained counsel who submitted the October 27, 2023 claim.

129. Upon information and belief, HCA also believed that Plaintiff or persons acting with her had made the anonymous reports to Limestone on October 19, 2023.

130. Plaintiff spoke as a citizen and parent on a matter of public concern, the physical mistreatment of nonverbal disabled children in a public school's special education classroom and the school's failure to protect them, and her interest and the public's interest in that speech outweighed any interest of HCA in suppressing it.

131. HCA and Dr. Taylor, acting with and through Anderson, took the following actions against Plaintiff because of her protected speech, each of which would likely deter a person of ordinary firmness from the exercise of First Amendment rights:

a. on October 19, 2023, Dr. Taylor placed Plaintiff on administrative leave, stating in writing that the reason was the "allegations made regarding mistreatment of your daughter by Horse Creek Academy employees";

b. ordered Plaintiff to have no contact with any current or former HCA employee, student, board member, or parent, which forbade her from speaking to the other parents of the children in Savage's classroom, to the witnesses to her daughter's mistreatment, and to HCA's own board about the very subject on which she had spoken;

c. barred her from the campus while the employees accused of the abuse remained in the classroom;

d. on October 31, 2023, Dr. Taylor, with Anderson, removed Plaintiff from her position in the elementary building and offered her only office work;

e. and they thereby made Plaintiff's working conditions so intolerable that a reasonable person in her position would have felt compelled to resign, which she did on December 30, 2023.

132. Dr. Taylor knew of Plaintiff's reports when she took each of those actions, and Dr. Taylor would not have taken any of those actions had Plaintiff not reported the force used on her daughter. Plaintiff's protected speech was the but-for cause of each action.

133. HCA is liable because each action was a deliberate choice, from among alternatives that included leaving Plaintiff in her position and investigating the conduct she reported, by Dr. Taylor, the official to whom HCA's board had delegated final authority to establish HCA's policy with respect to the discipline, assignment, leave, and separation of its employees.

134. No reasonable public school administrator could have believed it lawful to place a mother on leave, bar her from the school, and order her not to speak to other parents or the school board because she reported that school employees had dragged her disabled child across the floor on two occasions and physically forced her to the ground to pick up a sheet of paper on another.

135. As a direct and proximate result, Plaintiff has suffered lost wages and benefits, loss of her career in special education, severe emotional distress, mental anguish, humiliation, and loss of enjoyment of life.

136. Dr. Taylor's and HCA's conduct involved reckless or callous indifference to Plaintiff's federally protected rights, and Plaintiff is informed and believes that she is entitled to judgment against Dr. Taylor and HCA for compensatory damages, back pay, and front pay, and against Dr. Taylor for punitive damages, in amounts to be determined by a jury, together with attorney's fees and costs under 42 U.S.C. § 1988.

**FOR AN EIGHTH CAUSE OF ACTION**
**AGAINST DEFENDANT HORSE CREEK ACADEMY**
**(Retaliation and Interference, 42 U.S.C. § 12203 and 29 U.S.C. § 794)**

137. The previous paragraphs are incorporated by reference as if repeated verbatim herein.

138. This cause of action is brought by Plaintiff individually. The Americans with Disabilities Act prohibits discrimination against any individual because she has opposed any act or practice made unlawful by the Act, and makes it unlawful to coerce, intimidate, threaten, or interfere with any individual on account of her having aided or encouraged any other individual in the exercise or enjoyment of any right granted or protected by the Act, 42 U.S.C. § 12203(a), (b), with the remedies of Title II available for violations with respect to the rights Title II grants to M.T., 42 U.S.C. §§ 12133, 12203(c).

139. Section 504 and its implementing regulations likewise prohibit a recipient of federal financial assistance from intimidating, threatening, coercing, or discriminating against any individual because she has made a complaint or participated in an investigation. 29 U.S.C. § 794; 34 C.F.R. §§ 104.61, 100.7(e).

140. Plaintiff engaged in protected activity. By the reports, requests, and written statement described above, by asking that M.T. be kept out of the custody of the employees who had used force on her until the reports were investigated, and by retaining counsel who submitted a claim and requested an investigation, Plaintiff opposed the use of force on her disabled daughter

in HCA's program and HCA's failure to protect her, and she aided and encouraged M.T. in the exercise and enjoyment of M.T.'s right to be free from discrimination in that program.

141. Because of that protected activity, HCA, through its Executive Director and Human Resources Director, placed Plaintiff on administrative leave, forbade her from speaking to any HCA employee, parent, student, or board member, barred her from the campus, and removed her from her position as a special education teaching assistant and offered her only office work, each of which was an adverse action, and HCA thereby coerced, intimidated, and interfered with Plaintiff on account of her having aided and encouraged M.T. in the exercise of M.T.'s rights.

142. HCA would not have taken any of those actions had Plaintiff not engaged in that protected activity, and its retaliation and interference were intentional and were a direct and proximate cause of the lost wages and benefits and other damages Plaintiff has suffered.

143. Plaintiff is informed and believes that she is entitled to judgment against HCA for compensatory damages, back pay, and front pay in amounts to be determined by a jury and the Court, together with attorney's fees and costs under 42 U.S.C. § 12205 and 29 U.S.C. § 794a(b).

WHEREFORE, Plaintiff, individually and on behalf of M.T., prays for judgment against Defendants for actual and compensatory damages in an amount to be determined by a jury, and as to Defendant Horse Creek Academy on the First and Second Causes of Action within the limits of S.C. Code Ann. § 15-78-120 for each occurrence; for punitive damages against Defendants Savage, Tobias, and Ann Marie Taylor on the Third, Fourth, and Seventh Causes of Action; for back pay and front pay on the Seventh and Eighth Causes of Action; for reasonable attorney's fees and costs under 42 U.S.C. §§ 1988 and 12205 and 29 U.S.C. § 794a(b); for the costs of this action; and for such other and further relief as the Court may deem just and proper. Furthermore, Plaintiff demands a trial by jury.

[SIGNATURE PAGE TO FOLLOW]

Respectfully submitted,

**PRACHT INJURY LAWYERS, LLP**

*s/Kyle L. Brady*
J. Christopher Pracht, V
Federal ID: 10538
chris@864law.com
Kyle L. Brady
Federal ID: 13591
kyle@864law.com
1000 North Main Street
Anderson, South Carolina 29621
Telephone: (864) 226-7222
Fax: (864) 226-7224
***Attorneys for Plaintiff***

Anderson, South Carolina
October 2, 2026