IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| Maria Taylor, individually and as parent and natural guardian of M.T., a minor under the age of fourteen,<br><br>Plaintiff,<br><br>vs.<br><br>Limestone Charter Association, Horse Creek Academy, Ann Marie Taylor, Ivey Savage, and Tanya Tobias,<br><br>Defendants. | CIVIL ACTION NO. 1:26-cv-03102-SAC-KFM<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS IVEY SAVAGE AND TANYA TOBIAS'S JOINT MOTION TO DISMISS WITH PREJUDICE** |

Plaintiff Maria Taylor, individually and as parent and natural guardian of M.T., a minor (hereinafter "Plaintiff"), by and through her undersigned counsel, submits this Memorandum in Opposition to Defendants Ivey Savage and Tanya Tobias's Joint Motion to Dismiss With Prejudice and its supporting memorandum (together, "Savage and Tobias's Motion to Dismiss") **(ECF Nos. 32, 32-1)** pursuant to Local Civ. Rule 7.06 (D.S.C.).

## BRIEF OVERVIEW

This is a civil rights and tort action arising from the treatment of M.T., a child with Down syndrome, in a self-contained special education classroom at Horse Creek Academy ("HCA"), a public charter school in Aiken. The Amended Complaint alleges that M.T.'s teacher, Defendant Ivey Savage, twice dragged M.T. across the classroom floor to the bathroom, the second time by both ankles while M.T. cried and yelled no. It alleges that about three weeks later, after M.T.'s mother had asked Defendant Savage to stop and a school counselor had told Defendant Savage not to put her hands on M.T., Defendant Savage and a teacher's aide, Defendant Tanya Tobias, forced

M.T. to the floor by her back to make her pick up a piece of paper. **(Plaintiff's Amended Complaint, ECF No. 16, ¶¶ 1, 3, 12, 13, 17, 21, 23, 27, 29, 32, 35, 36)**.

Defendants Savage and Tobias ask the Court to rule on the pleadings, and with prejudice, that those allegations cannot amount to a constitutional violation and that qualified immunity bars the claim in any event. The Court should deny the motion. The Fourth Circuit reversed the Rule 12(b)(6) dismissal of a student's substantive due process claim against a teacher in Hall v. Tawney, 621 F.2d 607 (4th Cir. 1980), and it affirmed the denial of qualified immunity on such a claim on a motion to dismiss in Meeker v. Edmundson, 415 F.3d 317 (4th Cir. 2005). The Amended Complaint alleges that Defendant Savage repeatedly used force on a small child who posed no threat to anyone, that the force continued after Defendant Savage was told to stop, and that the force used on October 6, 2023 was out of all proportion to any need and was intended to hurt. Each argument Defendants Savage and Tobias advance depends on describing that conduct as the routine physical redirection of a noncompliant student. **(ECF No. 32-1 at 13, 15, 17).** The Amended Complaint does not allege routine redirection, and the Court could accept that description only by reading the allegations in the light most favorable to Defendants Savage and Tobias and replacing the facts Plaintiff pleaded with the facts these Defendants prefer. The alternative Fourth Amendment theory is properly pleaded under Rule 8(d)(2), and any dismissal should be without prejudice.

## BACKGROUND

The Amended Complaint asserts eight causes of action against five defendants. Defendants Savage and Tobias are named only in the Third Cause of Action, which Plaintiff brings on M.T.'s behalf under 42 U.S.C. § 1983 for violation of the Fourteenth Amendment and, in the alternative, the Fourth Amendment. **(ECF No. 16, ¶¶ 82 to 91)**. M.T. was six years old when the school year

began on August 8, 2023, and she turned seven later that month. **(ECF No. 16, ¶ 17)**. HCA's Individualized Education Program for M.T. identifies developmental delay and speech and language impairment as her areas of disability and states that she has difficulty using sentences to communicate, relies on picture cards and a speech generating device, and, when given a task she does not want to do, will tell her teachers no. **(ECF No. 16, ¶ 18)**. M.T. could not describe to her parents what an adult did to her at school. **(ECF No. 16, ¶ 19)**. Defendant Savage's written expectations instructed the aides in her room to "refrain from going outside our classroom to other teachers/staff to talk about things you do not agree with," and the classroom "Norms" posted for the year included "Our room, our business." **(ECF No. 16, ¶ 20)**. Plaintiff, who is M.T.'s mother, worked in the classroom in the beginning of the year as a teaching assistant. **(ECF No. 16, ¶ 22)**.

In August 2023, Defendant Savage told M.T. to go to the bathroom. Consistent with the known behavior caused by M.T.'s disability, M.T. said no and sat down on the floor. Defendant Savage then "took hold of M.T. and physically dragged her body across the floor from the play area to the classroom bathroom while M.T. struggled to get free." **(ECF No. 16, ¶ 23)**. M.T. was so upset that she pulled her own shirt off on the bathroom floor, and she came out of the bathroom crying. **(ECF No. 16, ¶ 24)**. During the week of August 23, 2023, when M.T. began crying at the instruction table, Defendant Savage slammed M.T.'s book on the table in front of her and later told Plaintiff that she "was just trying to scare her to get her attention." **(ECF No. 16, ¶ 26)**. On September 14, 2023, M.T. again did not want to go to the bathroom and sat down on the floor. Just as she did before, but more forcefully, Defendant Savage "forcefully grabbed M.T. by the ankle area of both legs and dragged her across the floor to the bathroom while M.T. yelled 'No No' and cried." **(ECF No. 16, ¶ 27)**. Before each physically abusive dragging, M.T.'s behavior did not create an emergency, and she did not pose a threat of harm to anyone. **(ECF No. 16, ¶¶ 25, 28)**.

On the day of the second forceful dragging incident, Plaintiff sent Defendant Savage a text message asking that she not drag M.T. on the floor any more, and Plaintiff reported the dragging to four HCA administrators and staff members. **(ECF No. 16, ¶ 29)**. On September 27, 2023, Plaintiff told HCA's Executive Director, Defendant Ann Marie Taylor ("Defendant Taylor"), that Defendant Savage had been pulling M.T. **(ECF No. 16, ¶¶ 11, 31)**. The next day, in a meeting with Plaintiff at which Defendant Savage was present, a counselor on HCA's discipline team "told Savage not to put her hands on M.T. and to call for behavior support instead." **(ECF No. 16, ¶¶ 21, 32)**.

On October 6, 2023, despite the repeated, known incidents of unjustified physical force committed by Defendant Savage, Defendant HCA placed M.T. back into Defendant Savage's classroom. **(ECF No. 16, ¶ 34)**. That morning M.T., who had colored most of her sheet to her ability, said no when Defendant Tobias told her to keep coloring. Defendants Tobias and Savage responded by forcing her to color. **(ECF No. 16, ¶¶ 13, 35)**. M.T. became upset and pushed her paper to the floor, and "Tobias and Savage then each forcefully pushed M.T.'s back down, forcing her toward and down to the floor to make her pick up the paper." **(ECF No. 16, ¶¶ 35, 36)**. Again M.T.'s behavior had not created an emergency, and she did not pose a threat of harm to anyone. **(ECF No. 16, ¶ 37)**. The Amended Complaint alleges that this force served no legitimate educational purpose, was out of all proportion to any need, and was intended to hurt M.T. rather than to teach or control her, that Defendant Savage violated M.T.'s right to bodily security on all three occasions and Defendant Tobias violated it on October 6, 2023, and that M.T. suffered physical injury, physical pain, fear, humiliation, emotional trauma, regression in her behavior, toileting, and acquired skills, and lasting emotional harm. **(ECF No. 16, ¶¶ 72, 85 to 87, 90)**. In the alternative, it alleges that each dragging and the forcing of M.T. to the floor was an objectively

unreasonable seizure of a small child who had committed no offense, posed no threat, and was not resisting by force or attempting to flee. **(ECF No. 16, ¶ 88)**.

Plaintiff and M.T.'s father filed this action without counsel on July 30, 2026, and Plaintiff, through counsel, filed the Amended Complaint on October 2, 2026. **(ECF Nos. 1, 16)**. On November 16, 2026, Defendants Savage and Tobias filed the present motion and an Answer. **(ECF Nos. 32, 32-1, 33)**. Defendant Taylor separately moved to dismiss the Fourth Cause of Action, **(ECF No. 38)**, and Plaintiff responds to that motion in a separate memorandum.

## LEGAL STANDARD

To survive a motion under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The Court must "accept as true all of the factual allegations contained in the complaint" and "draw all reasonable inferences in favor of the plaintiff." Owens v. Baltimore City State's Attorneys Office, 767 F.3d 379, 388 (4th Cir. 2014) (quoting E.I. du Pont de Nemours & Co. v. Kolon Industries, Inc., 637 F.3d 435, 440 (4th Cir. 2011)).

A defendant may raise qualified immunity in a Rule 12(b)(6) motion, but "when asserted at this early stage in the proceedings, 'the defense faces a formidable hurdle' and 'is usually not successful.'" Owens, 767 F.3d at 396 (quoting Field Day, LLC v. County of Suffolk, 463 F.3d 167, 191 to 92 (2d Cir. 2006)).

# ARGUMENT

## I. The Amended Complaint States a Claim That Defendants Savage and Tobias Violated M.T.'s Fourteenth Amendment Right to Bodily Security.

Defendants Savage and Tobias first argue that the Amended Complaint does not satisfy any element of the substantive due process standard that governs force by school employees. **(ECF No. 32-1 at 7 to 13)**. The Amended Complaint alleges each of the factors that standard weighs as to both Defendants Savage and Tobias.

### A. The Fourth Circuit treats disproportion, malice, and injury as factors bearing on whether force shocks the conscience, and it has twice held such claims sufficient on the pleadings.

The Fourth Circuit held in Hall that the substantive due process inquiry in school corporal punishment cases must be

> whether the force applied caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience.

Hall, 621 F.2d at 613. The court also observed that "[n]ot every violation of state tort and criminal assault laws will be a violation of this constitutional right, but some of course may." Id. Defendants Savage and Tobias quote that sentence without its last five words. **(ECF No. 32-1 at 8)**. Hall reversed a Rule 12(b)(6) dismissal as to the teacher who paddled the student and the principal who authorized part of the paddling. 621 F.2d at 609, 611, 614 to 15. The court acknowledged that the complaint used conclusory allegations to describe the incident, noted allegations about the teacher's demonstrated attitude toward the student from which malicious motivation might be inferred, and held that the allegations sufficed to state a claim. Id. at 614 to 15.

The Fourth Circuit applied Hall again in Meeker, where a high school wrestling coach was alleged to have instituted repeated beatings of a student by his teammates. 415 F.3d at 318 to 19. The court described disproportion, malice, and injury as factors, and it explained that a plaintiff

makes out a claim if consideration of them leads to the conclusion that the force "amounted to a brutal and inhumane abuse of official power literally shocking to the conscience." Id. at 321 (quoting Hall, 621 F.2d at 613). It held each factor adequately alleged. The beatings were unprovoked and therefore disproportionate to any need, the allegation that the coach deliberately instituted them on numerous occasions permitted a finding of malice, and allegations of excruciating physical pain, inflammation, and traumatic stress disorders that might be permanent were adequate to allege the required injury. Id. It also rejected the coach's argument that Hall did not reach force that was not traditional corporal punishment, reasoning that force arbitrarily ordered for no legitimate disciplinary purpose was "more, not less, likely" to be a malicious abuse of power. Id. at 324. The appeal arose from the denial of a motion to dismiss, and the Fourth Circuit affirmed. Id. at 319, 325.

Defendants Savage and Tobias treat disproportion, malice, and injury as separate elements, each of which the complaint must independently satisfy. **(ECF No. 32-1 at 9 to 11)**. The Fourth Circuit described them in Meeker as factors, but the Amended Complaint alleges all three, so the claim survives under either reading.

### B. The Amended Complaint alleges that Defendant Savage used force out of proportion to any need, with intent to hurt M.T., and caused her physical and lasting emotional injury.

In our case, the need presented on each occasion was slight. Twice a small child with Down syndrome said no to going to the bathroom and sat down on the floor, and once she pushed her coloring sheet to the floor after two adults forced her to color. **(ECF No. 16, ¶¶ 1, 17, 23, 27, 35)**. Her Individualized Education Program recorded that she will tell her teachers no when given a task she does not want to do, and on none of the three occasions did her behavior create an emergency or pose a threat of harm to anyone. **(ECF No. 16, ¶¶ 18, 25, 28, 37)**. Defendant Savage

responded by forcefully dragging M.T. across the floor multiple times, the second time by both ankles, and by joining Defendant Tobias in pushing her down to the floor by her back against her will over a coloring page. **(ECF No. 16, ¶¶ 23, 27, 36)**. Those allegations describe force "disproportionate to the need presented," especially in light of M.T.'s disability, vulnerable nature, and the known, expected behaviors caused by her disability. Hall, 621 F.2d at 613.

Defendants Savage and Tobias answer that the Amended Complaint pleads a legitimate need on its face, because toileting a young child is part of the responsibility of the adults in a special education classroom. **(ECF No. 32-1 at 12)**. A legitimate objective does not resolve whether the force applied was disproportionate to the need presented, which is one of the questions Hall asks. Hall concerned a paddling that the court analyzed as disciplinary corporal punishment, and the coach in Meeker was alleged to have used physical punishment as his sole means of discipline. 621 F.2d at 613 to 14; 415 F.3d at 319. The common law privilege on which Defendants Savage and Tobias rely, **(ECF No. 32-1 at 7 to 8)**, is likewise a privilege to use such force as a teacher reasonably believes to be necessary for the child's proper control, training, or education. Ingraham v. Wright, 430 U.S. 651, 661 (1977). Whether the need to have a special needs child use the bathroom, after she communicated she did not want to, called for inhumanely dragging her across the floor by her ankles while she cried out is the proportionality question, and at this stage the allegations of the Amended Complaint answer it in M.T.'s favor.

The argument also depends on a milder description of the conduct than the one pleaded, in a reframing that itself "shocks the conscience." Defendants Savage and Tobias state that Defendant Savage "moved M.T. across the classroom floor" and that the force used on October 6, 2023, consisted of "touching a child's back." **(ECF No. 32-1 at 10, 12)**. The Amended Complaint alleges dragging, once by both ankles while M.T. cried out, and a forceful push that took M.T. down to

the floor. **(ECF No. 16, ¶¶ 23, 27, 36)**. The phrases "hand over hand" and "a physical cue of a hand on a student's back," to which Defendants Savage and Tobias also point, **(ECF No. 32-1 at 4 n.1)**, are alleged to be Defendant Taylor's words in the letter by which she terminated the aide who reported the incident after she would not amend her statement accordingly, and the Amended Complaint's own account of what happened is to the contrary. **(ECF No. 16, ¶¶ 36, 47)**. At this stage, the Court must accept the allegations as pleaded and must read such allegations in a light most favorable to Plaintiff. Owens, 767 F.3d at 388.

The Amended Complaint alleges that the force used on October 6, 2023 was intended to hurt M.T. rather than to teach or control her. **(ECF No. 16, ¶ 85)**. Defendants Savage and Tobias call that allegation a legal conclusion, and they point out that it is directed to October 6, 2023 and not to the two draggings. **(ECF No. 32-1 at 11, 12)**. What a person intended is a fact, and "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). A general allegation of intent must still be plausible in its factual context, Iqbal, 556 U.S. at 686 to 87, and the facts alleged make it plausible as to all three occasions, each of which the Third Cause of Action alleges violated M.T.'s right to bodily security. **(ECF No. 16, ¶¶ 82, 87)**. An inference of malice arises from the facts a complaint alleges and does not depend on a sentence that labels the conduct malicious.

Four alleged facts support that inference here. First, Defendant Savage used force on M.T. three times in about two months, the last time about three weeks after M.T.'s mother asked her by text message not to drag M.T. on the floor any more and eight days after a counselor told her not to put her hands on M.T. and to call for behavior support instead. **(ECF No. 16, ¶¶ 23, 27, 29, 32, 35, 36)**. A teacher who uses force on a special needs child to push her down to the floor over a coloring page days after being told not to put her hands on that child, and who does not use the

alternative behavioral health personnel resources she was told to use, is not plausibly acting from "a merely careless or unwise excess of zeal." Hall, 621 F.2d at 613. She was operating with malice, intent, and knowledge.

Second, Defendant Savage explained that she slammed a book down in front of M.T., who was crying, because she "was just trying to scare her to get her attention." **(ECF No. 16, ¶ 26)**. Defendants Savage and Tobias observe that this incident involved no physical contact, **(ECF No. 32-1 at 12 n.4)**, but even so, its significance is what Defendant Savage said about her purpose. She slammed the book right next to a vulnerable, special needs child with the intent of scaring her.

Third, on none of the three occasions did M.T.'s behavior create an emergency or pose a threat of harm to anyone, **(ECF No. 16, ¶¶ 25, 28, 37)**, and the Fourth Circuit in Meeker cited a Ninth Circuit decision holding that when there is no disciplinary need to use force against a student, one can reasonably infer that the force was applied to cause harm and not in good faith. 415 F.3d at 324 (citing P.B. v. Koch, 96 F.3d 1298, 1304 (9th Cir. 1996)). Fourth, M.T. could not tell her parents what was done to her, and Defendant Savage's written expectations instructed the aides in the room not to take their disagreements outside it. **(ECF No. 16, ¶¶ 19, 20)**. In an unpublished decision, the Fourth Circuit found allegations that a special education teacher and an aide mistreated a disabled child all the more concerning because the child's limited ability to communicate verbally meant that she could neither report nor reject their conduct. H.H. ex rel. H.F. v. Moffett, 335 F. App'x 306, 313 (4th Cir. 2009) (unpublished).

Defendants Savage and Tobias contend that the allegation of intent to hurt is contradicted by the allegation that they forced M.T. to the floor "to make her pick up the paper." **(ECF No. 32-1 at 11; ECF No. 16, ¶ 36)**. The two allegations are consistent, because an adult can set out to make a child comply and choose a painful or frightening way of doing it in order to punish the

child for refusing. The beatings in Meeker were likewise alleged to serve the coach's purposes of discipline and of forcing the student off the team, both of which are goals that can be accomplished through legitimate, constitutionally harmless means, and the Fourth Circuit held that the allegations permitted a finding of malice. 415 F.3d at 319, 321.

The Amended Complaint alleges that M.T. suffered physical injury, physical pain, fear, humiliation, emotional trauma, regression in her behavior, toileting, and acquired skills, and lasting emotional harm, and that she will require counseling. **(ECF No. 16, ¶¶ 72, 86, 90)**. Defendants Savage and Tobias argue that this is insufficient because the Amended Complaint does not identify a bruise, cut, or fracture or allege medical treatment, and they emphasize that the student in Hall was hospitalized. **(ECF No. 32-1 at 4, 9 n.3, 10, 12)**. Neither Hall nor Meeker makes an identified wound or a hospitalization the threshold. Meeker held the injury adequately alleged without any mention of hospitalization, and it noted that the rights to bodily security protected by the Eighth Amendment and by substantive due process are substantially congruent and that under the Eighth Amendment the unnecessary and wanton infliction of pain alone is an injury severe enough to be cognizable. 415 F.3d at 321 & n.2 (citing Hudson v. McMillian, 503 U.S. 1, 8 (1992)). The injuries alleged here are of the same kinds as those alleged in Meeker, and regression in toileting, behavior, and acquired skills is a concrete harm, especially in a child with Down syndrome and a speech and language impairment. District courts in this circuit have denied motions to dismiss such claims by disabled students who alleged fear and emotional or developmental harm along with bruising or marks. See P.A. v. Fayette County Board of Education, No. 2:19-cv-00705, 2020 U.S. Dist. LEXIS 146887, at *2 to *3, *15 to *17 (S.D. W. Va. Aug. 14, 2020) (school occupational therapist allegedly slammed a nonverbal four-year-old with autism into a chair, causing bruising, abrasions, edema, an extreme fear of therapists, and significant developmental regression); Conklin v.

Jefferson County Board of Education, 205 F. Supp. 3d 797, 801, 808 to 11 (N.D. W. Va. 2016) (special education teacher allegedly grabbed a disabled high school student by the neck, choked him, and pushed him into a bookcase, causing marks, pain, humiliation, and fear). How severe M.T.'s injuries were is a question of fact to be explored in discovery, and at the pleading stage the Amended Complaint states a claim against Defendant Savage.

**C. The Amended Complaint alleges that Defendant Tobias, along with Defendant Savage, personally forced M.T. to the floor on October 6, 2023 without any need for force.**

Defendants Savage and Tobias are correct that Defendant Tobias must be evaluated on her own conduct. **(ECF No. 32-1 at 10)**. The Amended Complaint alleges that Defendants Tobias and Savage forced M.T. to color and that, when M.T. pushed her paper to the floor, Defendant Tobias pushed M.T. toward the floor, Defendant Savage joined in, and each of them "forcefully pushed M.T.'s back down, forcing her toward and down to the floor to make her pick up the paper." **(ECF No. 16, ¶¶ 35, 36)**. Defendant Tobias is therefore alleged to have used the force herself, and to have used it first.

Those allegations address each factor as to Defendant Tobias. The need presented was a sheet of paper on the floor, pushed there due to the well-known, common behavior of a small, helpless, special needs child who posed no threat to anyone. The two adults responsible for her safety and care responded by forcefully pushing her body down to the floor. **(ECF No. 16, ¶¶ 35 to 37)**. Defendants Savage and Tobias concede that M.T.'s age and disability are part of the context in which disproportion is judged, but they argue that "touching a child's back" to have her pick up her materials is not disproportionate. **(ECF No. 32-1 at 10 to 11)**. The Amended Complaint does not allege a touch. Regardless, it is inconceivable that simply "touching a child's back," as Defendants euphemistically characterize the incident, would cause her to fall to the ground or

cause another aide in the classroom to leave to report the incident to the child's mother. In reality, the Amended Complaint alleges that Defendant Tobias, like Defendant Savage, intended to hurt M.T. rather than to teach or control her **(ECF No. 16, ¶ 85)**, and that allegation is plausible where two adults first forced a child to color and then forcefully pushed her to the floor over a coloring page. Defendants Savage and Tobias call the allegation that this force caused M.T. physical injury and lasting emotional harm conclusory, **(ECF No. 32-1 at 10)**, but the harm alleged is adequate at the pleading stage for the reasons given in Section I.B.

Defendants Savage and Tobias also point out that the Amended Complaint does not allege that Defendant Tobias struck M.T., used an object, or said anything revealing her intent, and they compare the October 6, 2023 force to a single slap and a single push that other courts found insufficient. **(ECF No. 32-1 at 11)**. Hall does not require any of those things, and as explained in Section I.D, each of those decisions involved a single momentary act by one adult and not two adults forcing a small disabled child to the floor. The Amended Complaint therefore states a claim against Defendant Tobias.

**D. The decisions Defendants Savage and Tobias cite as rejecting similar claims were decided on summary judgment records or involved a single momentary act.**

Defendants Savage and Tobias cite five decisions in which claims of force by school employees failed. **(ECF No. 32-1 at 8 to 11)**. Three of the five were decided on summary judgment, on records that established what happened and why. See Gottlieb v. Laurel Highlands School District, 272 F.3d 168, 170 to 71, 175 (3d Cir. 2001) (affirming summary judgment for an assistant principal who pushed a student once, on a record in which the student herself stated that she believed he did not intend to injure her); Savoy v. Charles County Public Schools, 798 F. Supp. 2d 732, 734 to 35, 738 to 39 (D. Md. 2011) (granting summary judgment on the federal claims of

a thirteen-year-old who, by his own account, pulled his arm from a school employee's grip and walked away before he was pushed against a wall); Brown ex rel. Brown v. Ramsey, 121 F. Supp. 2d 911, 913 to 14, 923 to 24 (E.D. Va. 2000) (granting summary judgment on evidence that the student's Individualized Education Programs and Virginia law authorized physical restraint in certain situations and that the hold at issue was used in connection with placing the student in time-out and ended when he stopped crying), aff'd, 10 F. App'x 131 (4th Cir. 2001) (per curiam) (unpublished). Brown also found the severe injury requirement unmet where the student experienced pain and post-traumatic stress disorder without physical injury, 121 F. Supp. 2d at 923, but the Fourth Circuit later held in Meeker that allegations of excruciating physical pain, inflammation, and traumatic stress disorders adequately alleged the required injury. 415 F.3d at 321.

The other two decisions were decided on the pleadings, and each involved a single momentary act that caused little or no physical injury. See Lillard v. Shelby County Board of Education, 76 F.3d 716, 721, 726 (6th Cir. 1996) (single slap that was "neither severe in force nor administered repeatedly" and that caused no physical injury); Brooks v. School Board of City of Richmond, 569 F. Supp. 1534, 1535 to 36 (E.D. Va. 1983) (teacher allegedly pierced a student's arm with a straight pin through several layers of clothing, and the student "at most suffered a minor injury").

None of the five decisions involved a teacher who repeatedly dragged a disabled child across the floor or who used force on the child again days after being told not to put her hands on her. Nor do the five decisions support the use of force on a disabled child for behavior her school had documented and had told her teacher to handle without touching her. Brown is the only one of the five that involved a special education student, and the court there granted summary judgment

on a record showing that the student's own education plan authorized physical restraint. The student's Individualized Education Programs provided that he would be physically restrained "in the event that Daniel becomes a danger to himself or to others" and that physical restraint "may be used when necessary for the safety of the child and others," and his teachers gave evidence that they restrained him when he threatened to use floor tiles as weapons, threw objects, and struck other students. 121 F. Supp. 2d at 913, 916. The court found the force proportionate to the need in part because the Individualized Education Programs and Virginia law explicitly authorized physical restraint in certain situations. Id. at 923 to 24.

M.T.'s school gave the opposite instruction. Her Individualized Education Program recorded that she will tell her teachers no when given a task she does not want to do, and HCA knew that M.T. and the other nonverbal children in the classroom would refuse tasks and sit on the floor. **(ECF No. 16, ¶¶ 18, 65(a))**. Eight days before October 6, 2023, a counselor on HCA's discipline team told Defendant Savage not to put her hands on M.T. and to call for behavior support instead. **(ECF No. 16, ¶¶ 21, 32)**. The Amended Complaint alleges that Defendant Savage nonetheless joined Defendant Tobias in using force on M.T. to compel compliance because of behaviors that are manifestations of her disability, when her behavior created no emergency and posed no threat of harm to anyone. **(ECF No. 16, ¶¶ 36, 37, 87, 121)**. A seven-year-old with Down syndrome did not want to keep coloring and pushed a sheet of paper to the floor, and two adults forced her to the floor for it. If physical force were a justified means of correcting the harmless, nonthreatening behaviors that special needs children exhibit because of their disabilities, our most vulnerable children would be routinely exposed to violent force every day, turning our nation's self-contained special needs classrooms into something worse than holding cells. Even a prisoner is protected from the unnecessary and wanton infliction of pain, and the Fourth Circuit has

recognized that the rights to bodily security protected by the Eighth Amendment and by substantive due process are "substantially congruent." Meeker, 415 F.3d at 321 n.2 (quoting Hall, 621 F.2d at 611 n.5). The Ninth Circuit has confronted this situation. There, a special education teacher allegedly grabbed the hands of a nonverbal four-year-old and slapped him repeatedly, hitting his head and face, apparently to teach him not to swat himself, "a behavior incident to his disability," and on another occasion body slammed him into a chair. Preschooler II v. Clark County School Board of Trustees, 479 F.3d 1175, 1178 to 79 (9th Cir. 2007). The court held that force unreasonable under the Fourth Amendment in light of the child's age and disability, noting that he "posed no danger to anyone" and was not disruptive in the classroom. Id. at 1180.

Additionally, the injury alleged by Plaintiff is not a momentary one. Beyond physical injury and pain, the Amended Complaint alleges that M.T. regressed in her behavior, her toileting, and skills she had already acquired, and that she suffered lasting emotional harm for which she will require counseling. **(ECF No. 16, ¶¶ 72, 86)**. For a child with Down syndrome and a speech and language impairment, the loss of toileting and other skills she had worked so hard to gain is a lasting injury, not the passing effect of a single slap or a pinprick.

The Supreme Court and Fourth Circuit decisions that Defendants Savage and Tobias cite for the height of the standard confirm that the Amended Complaint alleges conduct at the culpable end of the spectrum, because conduct "intended to injure in some way unjustifiable by any government interest" is the kind of official action most likely to shock the conscience. County of Sacramento v. Lewis, 523 U.S. 833, 849 (1998), abrogated on other grounds by Saucier v. Katz, 533 U.S. 194 (2001); see also Waybright v. Frederick County, 528 F.3d 199, 205 (4th Cir. 2008) (describing conduct intended to injure as the general rule for a successful due process challenge to

executive action). The Court should therefore deny Savage and Tobias's Motion to Dismiss as to the Fourteenth Amendment claim.

## II. The Third Cause of Action Properly Pleads, in the Alternative, That the Draggings and the Forcing of M.T. to the Floor Were Unreasonable Seizures Under the Fourth Amendment.

Defendants Savage and Tobias next argue that the alternative Fourth Amendment theory fails as a matter of law because the Fourth Circuit analyzes a school employee's use of force under substantive due process, and that the Amended Complaint alleges no unreasonable seizure in any event. **(ECF No. 32-1 at 14 to 16)**. The Federal Rules permit the alternative pleading, the Fourth Amendment reaches seizures of students by school officials, and the facts alleged describe unreasonable ones.

The Third Cause of Action pleads in the alternative that each dragging and the forcing of M.T. to the floor was an unreasonable seizure. **(ECF No. 16, ¶ 88)**. "If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Fed. R. Civ. P. 8(d)(2). The alternative is pleaded because substantive due process analysis is displaced only when a more specific constitutional provision, such as the Fourth Amendment, covers the claim, Lewis, 523 U.S. at 843, and a seizure occurs when government actors have restrained a person's liberty by physical force or a show of authority. Graham v. Connor, 490 U.S. 386, 395 n.10 (1989).

The Fourth Amendment applies to searches conducted by public school officials, New Jersey v. T.L.O., 469 U.S. 325, 333 (1985), and the Fourth Circuit has explained that its limits apply not only to law enforcement officers but to all activities of sovereign authority, and that the policies underlying T.L.O. "easily support its extension to seizures of students by school officials." Wofford v. Evans, 390 F.3d 318, 326 (4th Cir. 2004); see also DesRoches v. Caprio, 156 F.3d 571, 574 (4th Cir. 1998) (stating that searches and seizures by school officials "are governed by the

same Fourth Amendment principles that apply in other contexts"). Defendants Savage and Tobias quote that passage of Wofford, **(ECF No. 32-1 at 15)**, but they argue that the Fourth Circuit analyzes a teacher's use of force under Hall and that Graham addressed law enforcement officers and free citizens, while a school's authority over its students is custodial. **(ECF No. 32-1 at 14)**. Neither Hall nor Meeker holds that the Fourth Amendment is unavailable. Hall was decided before T.L.O., Graham, and Wofford and did not address the Fourth Amendment, and in Meeker the Fourth Circuit did not reach the plaintiff's Fourth Amendment theory because it deemed the theory abandoned on appeal. 415 F.3d at 325 n.6. T.L.O. accounts for the school setting through the standard it applies and not by exempting school officials from the Fourth Amendment. Under that standard the action must be justified at its inception and reasonably related in scope to the circumstances that justified it, and the measures used must not be "excessively intrusive in light of the age and sex of the student" and the nature of the infraction. 469 U.S. at 341 to 42.

Defendants Savage and Tobias assert that the weight of authority holds that a teacher's momentary physical redirection of a student is not a seizure at all. **(ECF No. 32-1 at 14 to 15)**. The authority is divided, and one of the three decisions they cite for that proposition was affirmed on reasoning that rejects it. The district court in Wallace ex rel. Wallace v. Batavia School District 101 reasoned that the Fourth Amendment's protection against excessive force applies only to law enforcement officers making arrests. 870 F. Supp. 222, 225 (N.D. Ill. 1994), aff'd, 68 F.3d 1010 (7th Cir. 1995). On appeal the Seventh Circuit held that seizures of students by teachers do come within the Fourth Amendment, and that a teacher who seizes a student violates the Fourth Amendment only when the restriction of liberty is "unreasonable under the circumstances then existing and apparent." 68 F.3d at 1012 to 14. The Fourth Circuit cited that Seventh Circuit decision in Wofford when it extended T.L.O. to seizures of students by school officials. 390 F.3d

at 326. Of the other two, one declined to follow the Seventh Circuit in part because the court was bound by Tenth Circuit precedent, Gonzales v. Passino, 222 F. Supp. 2d 1277, 1281 (D.N.M. 2002), and the other held that a teacher's "momentary use of force" is judged under the substantive due process standard. Kurilla v. Callahan, 68 F. Supp. 2d 556, 557 (M.D. Pa. 1999). The Ninth Circuit, like the Seventh, applies the Fourth Amendment, and it has held that a special education teacher's alleged beating and slamming of a nonverbal four-year-old was an unreasonable use of force in light of the child's age and disability. Preschooler II, 479 F.3d at 1178, 1180. District courts in this circuit have reached different conclusions. Compare P.A., 2020 U.S. Dist. LEXIS 146887, at *10 to *14 (denying motion to dismiss a Fourth Amendment claim against a school occupational therapist), with Conklin, 205 F. Supp. 3d at 808 (dismissing a Fourth Amendment claim against a special education teacher and analyzing the alleged force under Hall). Defendants Savage and Tobias cite no Fourth Circuit decision holding that a school employee's use of physical force similar to that alleged in Plaintiff's Amended Complaint on a student is not a seizure, and the Court need not resolve the question on this motion.

The Amended Complaint alleges that Defendant Savage restrained M.T.'s freedom of movement by physical force on each occasion, that Defendant Tobias did so on October 6, 2023, and that each restraint was objectively unreasonable because M.T. had committed no offense, posed no threat, was not resisting by force or attempting to flee, and was a small child in an elementary special education classroom. **(ECF No. 16, ¶¶ 23, 27, 36, 88)**. Defendants Savage and Tobias respond that those allegations borrow the vocabulary of police arrest cases. **(ECF No. 32-1 at 16)**. The facts are what matter, and under T.L.O. the same facts bear on whether a restraint was justified at its inception and reasonable in scope. Because the Third Cause of Action is

sufficient if either statement of the claim is sufficient, the Court should not dismiss the alternative theory at the pleading stage.

## III. Defendants Savage and Tobias Are Not Entitled to Dismissal on Qualified Immunity.

Defendants Savage and Tobias finally argue that qualified immunity bars the Third Cause of Action because no controlling decision placed the unlawfulness of the conduct alleged beyond debate. **(ECF No. 32-1 at 16 to 19)**. To establish qualified immunity, a public official "must demonstrate that (1) a plaintiff has not alleged or shown facts that 'make out a violation of a constitutional right,' or that (2) 'the right at issue was [not] "clearly established" at the time of' its alleged violation." Owens, 767 F.3d at 395 to 96 (alteration in original) (quoting Pearson v. Callahan, 555 U.S. 223, 232 (2009)). For the reasons given in Sections I and II, the Amended Complaint alleges a constitutional violation. The right was also clearly established, and at the pleading stage that question must be answered on the facts as the Amended Complaint alleges them.

### A. The right of a student to be free from malicious and disproportionate force by school employees has been clearly established in the Fourth Circuit since 1980.

A right is clearly established when its contours are sufficiently clear that a reasonable official would understand that what she is doing violates it. Owens, 767 F.3d at 398. "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held [to be] unlawful." Id. (alteration in original) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)). The question is whether the state of the law gave the defendants "fair warning" that their alleged conduct was unconstitutional. Tolan v. Cotton, 572 U.S. 650, 656 (2014) (per curiam) (quoting Hope, 536 U.S. at 741).

The Fourth Circuit applied those principles to the right at issue in Meeker and held, on a motion to dismiss, that the right was clearly established. The court explained that the Fourteenth

Amendment liberty interest in bodily integrity has been recognized since at least the Supreme Court's decision in Ingraham in 1977, that educators in the Fourth Circuit have known since Hall was decided in 1980 that the arbitrary use of corporal punishment is prohibited by the Fourteenth Amendment, and that five other circuits had adopted the rationale and holding of Hall. 415 F.3d at 323 to 25. The conduct alleged here occurred in 2023, forty-three years after Hall and eighteen years after Meeker.

Defendants Savage and Tobias argue that the right to be free from excessive physical force by school employees is too general a proposition to defeat qualified immunity, and that Hall states only a general standard whose case-by-case evaluation of severity, proportionality, and motive cannot give notice that particular conduct is unlawful. **(ECF No. 32-1 at 17 to 18)**. The Fourth Circuit treated Hall as clearly established law in Meeker, explaining that the law is clearly established "not only when the very action in question has previously been held unlawful, but also when pre-existing law makes the unlawfulness of the act apparent," and it rejected the coach's argument that Hall did not apply because the beatings were not traditional corporal punishment. 415 F.3d at 323 to 24 (internal quotation marks omitted). It has also explained that, even when no controlling decision has adjudicated the specific right in question, a right may still be clearly established if a general constitutional rule already identified in the case law applies "with obvious clarity to the specific conduct in question." Booker v. South Carolina Department of Corrections, 855 F.3d 533, 543 (4th Cir. 2017) (quoting Hope, 536 U.S. at 741). The argument also overlooks the role of motive in the Hall standard. An employee who uses force on a child in order to hurt her, and not to teach or control her, does not need a factually identical precedent to know that her conduct is unlawful. See Dean v. Jones, 984 F.3d 295, 310 (4th Cir. 2021) (explaining, in an Eighth Amendment excessive force case, that when wrongful intent is an element of the constitutional

violation, liability turns on the officer's state of mind and not on the particular factual circumstances, so an officer who acts with a prohibited motive should know that he is violating the law).

The Fourth Circuit applied Hall in that way in H.H., an unpublished decision that Plaintiff cites as an illustration of how the Fourth Circuit applies its published precedent. A special education teacher and an aide were alleged to have maliciously kept a disabled child restrained in her wheelchair for hours at a time. 335 F. App'x at 307 to 08. The court concluded that a reasonable teacher would know that such conduct interferes with a child's constitutional liberty interests, that no decision on identical facts was required, and that qualified immunity does not protect an official motivated by the kind of bad faith alleged. Id. at 314 to 15. District courts in this circuit have likewise denied qualified immunity at the pleading stage to school employees alleged to have used force on disabled students. See P.A., 2020 U.S. Dist. LEXIS 146887, at *16 to *17 (reasoning that even if the therapist's justification was to place the child in a chair, the alleged force was clearly disproportionate to that goal); Conklin, 205 F. Supp. 3d at 806 to 07 (denying qualified immunity to a special education teacher alleged to have choked a disabled student). The same analysis applies to Defendant Tobias, who is alleged to have personally forced a small child with Down syndrome to the floor with the intent to punish her and use physical force to correct behavior known to be caused by her disability. **(ECF No. 16, ¶¶ 36, 85, 87)**. Defendants Savage and Tobias argue that the earlier incidents cannot be used against Defendant Tobias, **(ECF No. 32-1 at 19)**, but whether she knew about the earlier draggings does not affect whether a reasonable aide would have known that her own conduct on October 6, 2023 was unlawful.

### B. Defendants Savage and Tobias frame the clearly established question around a version of the facts that the Amended Complaint does not allege.

Defendants Savage and Tobias contend that the relevant question is whether precedent placed beyond debate that a teacher or aide violates the Constitution "by physically moving a six-year-old student who refused to go to the bathroom and sat on the floor, or by pushing a student's back toward the floor to have her pick up a paper she threw there." **(ECF No. 32-1 at 17)**. That formulation substitutes the milder description addressed in Section I.B for the conduct pleaded. It also omits the allegations that bear most directly on whether a reasonable employee would have known the conduct was unlawful, which are that there was no emergency and no threat, that Defendant Savage had been asked to avoid future physical contact and was told to call behavioral health resources if she needed assistance, and that the force used on October 6, 2023 was intended to hurt. **(ECF No. 16, ¶¶ 25, 28, 29, 32, 37, 85)**. Courts defining the clearly established right "must take care not to define a case's 'context' in a manner that imports genuinely disputed factual propositions." Tolan, 572 U.S. at 657. Tolan arose on summary judgment, and the instruction applies at least equally on a motion to dismiss, where the Court accepts the allegations of the complaint as true. Owens, 767 F.3d at 388.

The Ninth Circuit applied the same principle to a claim much like this one in Preschooler II. School officials there characterized a special education teacher's alleged abuse of a nonverbal four-year-old as, at worst, a failure to conform to best practices. 479 F.3d at 1180. The court rejected that characterization because it was obligated to accept the allegations as true, held that existing law "plainly prohibits excessive hitting, dragging or throwing of public school children," and affirmed the denial of qualified immunity on a motion to dismiss as to the teacher's alleged beating and slamming of the child. Id. at 1177 to 78, 1180, 1182 to 83.

**C. The decisions Defendants Savage and Tobias cite as showing a lack of fair notice involved a child who kicked and charged at school staff or were decided on summary judgment records.**

Defendants Savage and Tobias rely principally on S.Y. v. Sampson County Board of Education, 755 F. Supp. 3d 930 (E.D.N.C. 2024). **(ECF No. 32-1 at 18)**. The complaint in that case described a six-year-old who, over several months, had slapped another student, hit adults, thrown objects, and kicked a school social worker. 755 F. Supp. 3d at 937 to 38. On April 10, 2024, she threw pens and pencils from her teacher's desk, tried to kick the teacher, and charged at her, and at some point that day the principal and the school counselor carried her by her arms and legs and placed her in an unlocked closet for about five minutes. Id. at 938 to 39, 946. The court reasoned that the child could therefore be removed to ensure the safety of the teacher and the other children, and it held in the alternative that the brief confinement did not violate clearly established law. Id. at 946. The court quoted, and did not question, the Fourth Circuit's statement in H.H. that a reasonable teacher would know that maliciously restraining a child in her chair for hours interferes with the child's constitutional liberty interests, and it found H.H. distinguishable. Id. The Amended Complaint here alleges the opposite facts, which are a child who posed no threat to anyone and force intended to hurt her. **(ECF No. 16, ¶¶ 25, 28, 37, 85)**.

The remaining authorities are Brown and the district court decision in Wallace. **(ECF No. 32-1 at 18)**. Brown was a summary judgment decision on the merits, made on the evidentiary record described in Section I.D. The district court in Wallace addressed qualified immunity only in the alternative, also on summary judgment. 870 F. Supp. at 224, 227. The Seventh Circuit affirmed on the merits, on undisputed facts showing that a teacher briefly took a sixteen-year-old by the wrist and elbow to hurry her out of a classroom where a fight was about to break out. 68

F.3d at 1011, 1014 to 16. Neither decision suggests that a reasonable teacher could believe it lawful to drag a child across the floor by her ankles or to force her to the floor in order to hurt her.

**D. Qualified immunity on the alternative Fourth Amendment theory turns on facts that cannot be resolved on the pleadings.**

Defendants Savage and Tobias argue that no controlling authority establishes that a teacher's physical redirection of a student is a Fourth Amendment seizure. **(ECF No. 32-1 at 18 to 19)**. By 2023 the Fourth Circuit had extended T.L.O. to seizures of students by school officials, Wofford, 390 F.3d at 326, and it had treated a child's age and the school context as part of the Fourth Amendment reasonableness inquiry in a case involving a school resource officer's handcuffing of an elementary school student. E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 179 (4th Cir. 2018). Defendants Savage and Tobias point out that Dolgos affirmed qualified immunity for the officer. **(ECF No. 32-1 at 19)**. The Fourth Circuit did so only after holding that the handcuffing of a calm, compliant ten-year-old was unreasonable, and it emphasized that its excessive force holding "is clearly established for any future qualified immunity cases involving similar circumstances." 884 F.3d at 180, 187. Whether the restraints alleged here were reasonable depends on facts that the pleadings do not resolve in favor of Defendants Savage and Tobias, including what M.T. was doing, how much force was used, and what alternatives were available. A district court in this circuit denied qualified immunity at the pleading stage on a Fourth Amendment claim against a school occupational therapist alleged to have slammed a nonverbal four-year-old into a chair, while recognizing the need for further factual development on the defense. P.A., 2020 U.S. Dist. LEXIS 146887, at *12 to *14.

The disagreement among courts that Defendants Savage and Tobias identify concerns which constitutional provision supplies the standard for a school employee's use of force. It is not a disagreement about whether the conduct alleged here is lawful, and "to be clearly established, a

right need not be one with respect to which all judges on all courts agree." Owens, 767 F.3d at 399. The alternative theory also rests on the same facts as the Fourteenth Amendment claim, so discovery on the Third Cause of Action will be the same under either theory, and the Court need not resolve qualified immunity on the alternative theory before the record is developed. Defendants Savage and Tobias are therefore not entitled to dismissal on qualified immunity.

## IV. Any Dismissal Should Be Without Prejudice and With Leave to Amend.

Defendants Savage and Tobias ask that the Third Cause of Action be dismissed with prejudice. **(ECF No. 32 at 2; ECF No. 32-1 at 20)**. If the Court concludes that the Amended Complaint is deficient in any respect, dismissal with prejudice would not be warranted. The Fourth Circuit held in Ostrzenski v. Seigel that, even if the complaint in that case was inadequate, the district court should not have dismissed it with prejudice without permitting the plaintiff an opportunity to amend. 177 F.3d 245, 252 to 53 (4th Cir. 1999). "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The deficiencies Defendants Savage and Tobias assert are omissions of factual detail, such as the nature of M.T.'s physical injuries, whether she received treatment, and what Defendants Savage and Tobias said or knew, **(ECF No. 32-1 at 4, 10 to 12, 19)**, which an amended pleading could address, and the Amended Complaint is the first pleading filed on M.T.'s behalf by counsel. Plaintiff therefore respectfully requests that any dismissal be without prejudice and with leave to amend.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants Ivey Savage and Tanya Tobias's Joint Motion to Dismiss With Prejudice in its entirety. In the alternative, if the Court finds the Third Cause of Action deficient in any respect, Plaintiff requests that any dismissal be without prejudice and with leave to amend.

Respectfully submitted,

**PRACHT INJURY LAWYERS, LLP**

*s/Kyle L. Brady*

J. Christopher Pracht, V
Federal ID: 10538
chris@864law.com
Kyle L. Brady
Federal ID: 13591
kyle@864law.com
1000 North Main Street
Anderson, South Carolina 29621
Telephone: (864) 226-7222
Fax: (864) 226-7224
***Attorneys for Plaintiff***

Anderson, South Carolina
November 25, 2026