IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| Maria Taylor, individually and as parent and natural guardian of M.T., a minor under the age of fourteen,<br><br>Plaintiff,<br><br>vs.<br><br>Limestone Charter Association, Horse Creek Academy, Ann Marie Taylor, Ivey Savage, and Tanya Tobias,<br><br>Defendants. | CIVIL ACTION NO. 1:26-cv-03102-SAC-KFM<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT ANN MARIE TAYLOR'S MOTION TO DISMISS PLAINTIFF'S FOURTH CAUSE OF ACTION** |

Plaintiff Maria Taylor, individually and as parent and natural guardian of M.T., a minor (hereinafter "Plaintiff"), by and through her undersigned counsel, submits this Memorandum in Opposition to Defendant Ann Marie Taylor's Motion to Dismiss Plaintiff's Fourth Cause of Action ("Defendant Taylor's Motion to Dismiss") **(ECF No. 38)** pursuant to Local Civ. Rule 7.06 (D.S.C.).

## BRIEF OVERVIEW

The Fourth Cause of Action is a supervisory liability claim under 42 U.S.C. § 1983 against Defendant Ann Marie Taylor ("Defendant Taylor"), who was the Executive Director of Horse Creek Academy ("HCA") in 2023. It alleges that Defendant Taylor was told that a special education teacher, Defendant Ivey Savage, had been pulling M.T., a nonverbal child with Down syndrome, that Defendant Taylor took no action, and that nine days later M.T. was placed back in Defendant Savage's classroom, where Defendant Savage and a teacher's aide, Defendant Tanya Tobias, forced her to the floor. **(Plaintiff's Amended Complaint, ECF No. 16, ¶¶ 1, 11 to 13, 31, 34 to 36, 92 to 100)**.

Defendant Taylor's Motion to Dismiss states that Plaintiff cannot establish any element of supervisory liability, but it argues only the first and third elements and presents no argument that those allegations fail to describe deliberate indifference. Its argument rests on a single premise, which is that Defendants Savage and Tobias did not violate M.T.'s constitutional rights in the first place. **(ECF No. 38 at 3)**. That premise is wrong for the reasons stated in Plaintiff's Memorandum in Opposition to Defendants Ivey Savage and Tanya Tobias's Joint Motion to Dismiss With Prejudice ("Plaintiff's Memorandum in Opposition to Savage and Tobias's Motion to Dismiss"), filed contemporaneously. The Amended Complaint also alleges each element of supervisory liability, and both the liability of a supervisor and the unlawfulness of the force Defendant Taylor knew of were clearly established in 2023. The Court should deny the motion.

## BACKGROUND

Plaintiff set out the facts alleged concerning the force used on M.T. in the Background section of Plaintiff's Memorandum in Opposition to Savage and Tobias's Motion to Dismiss and incorporates that statement here. In summary, the Amended Complaint alleges that Defendant HCA's self-contained special education classrooms had a persistent and well settled practice of using physical force to compel compliance from nonverbal disabled children who could not report what was done to them. **(ECF No. 16, ¶¶ 108, 109)**. M.T., a seven (7) year old child with Down syndrome, was one of those children, and Defendant HCA placed her in a self-contained special education classroom taught by Defendant Savage. **(ECF No. 16, ¶¶ 1, 17, 19)**. Plaintiff, who is M.T.'s mother, worked in the same classroom as a teaching assistant. **(ECF No. 16, ¶¶ 1, 22)**. In August 2023, Defendant Savage, the special education teacher responsible for M.T.'s care and safety, asked her to go to the bathroom. After M.T. simply responded "no" and sat down, Defendant Savage took hold of M.T. and forcefully dragged her across the classroom floor to the

bathroom. **(ECF No. 16, ¶¶ 12, 23, 67)**. M.T. was so upset that she pulled her own shirt off on the bathroom floor, and she came out crying. **(ECF No. 16, ¶ 24)**. During the week of August 23, 2023, when M.T. began crying at the instruction table, Defendant Savage slammed M.T.'s book on the table in front of her, told her "you need to stop this now," and later explained to Plaintiff that she "was just trying to scare her to get her attention." **(ECF No. 16, ¶ 26)**. On September 14, 2023, Defendant Savage dragged M.T. to the bathroom again, this time by both ankles. **(ECF No. 16, ¶ 27)**. Each time, all M.T. had done was say no and sit down on the floor, and her behavior had not created an emergency or posed a threat of harm to anyone. **(ECF No. 16, ¶¶ 23, 25, 27, 28)**.

Defendant Taylor was HCA's Executive Director and school leader, and the Amended Complaint alleges on information and belief that she was the official to whom HCA's board delegated final authority to establish HCA's policy with respect to the hiring, discipline, assignment, leave, and separation of HCA employees, the practices permitted in HCA's classrooms, and the response to reports that a student has been mistreated. **(ECF No. 16, ¶ 11)**. She had the authority to remove Defendant Savage, reassign M.T., investigate, discipline, retrain, or monitor Defendant Savage, and direct the adults in the classroom not to use force on M.T. **(ECF No. 16, ¶ 93)**. HCA employees witnessed both draggings. **(ECF No. 16, ¶ 77)**. On September 14, 2023, the day of the second dragging, Plaintiff sent Defendant Savage a text message asking that she not drag M.T. on the floor anymore. **(ECF No. 16, ¶ 29)**. The same day, Plaintiff reported to four HCA administrators and staff members, HCA's Special Programs Director, its Elementary Lead, its lead for teaching assistants, and its occupational therapist, that Defendant Savage had forcefully dragged M.T. across the floor by her legs and that it was the second time, and Plaintiff asked that she herself be reassigned out of Defendant Savage's room. **(ECF No. 16, ¶¶ 21, 29)**.

The next school day, the Special Programs Director directed Plaintiff to report to Defendant Savage's room as before, and none of those four administrators and staff members removed Defendant Savage from the classroom, removed M.T. from Defendant Savage's care, or investigated, documented, or reported the dragging. **(ECF No. 16, ¶ 30)**. On September 27, 2023, Plaintiff told Defendant Taylor that Defendant Savage had been pulling M.T., and Defendant Taylor took no action. **(ECF No. 16, ¶ 31)**. On September 28, 2023, in a meeting with Defendant Savage present, Plaintiff told a counselor on HCA's discipline team that she was concerned for M.T.'s safety in Defendant Savage's classroom and asked that M.T. not be placed back in Defendant Savage's class. **(ECF No. 16, ¶¶ 21, 32)**. The counselor assured Plaintiff that it would not happen again and "told Savage not to put her hands on M.T. and to call for behavior support instead." **(ECF No. 16, ¶ 32)**. By September 28, 2023, six HCA administrators and staff members, including Defendant Taylor, had received Plaintiff's reports, and Defendant HCA had not removed Defendant Savage, investigated or reported the incidents, retrained Defendant Savage, or adopted any rule on when an adult may put hands on a child. **(ECF No. 16, ¶ 33)**.

On October 6, 2023, Defendant HCA placed M.T. back into Defendant Savage's classroom. **(ECF No. 16, ¶ 34)**. That morning M.T., who was coloring in a coloring book, colored most of her sheet to her ability. Although M.T. posed no threat to anyone in the classroom, Defendant Tobias, a teacher's aide working in the classroom, told her to keep coloring, and Defendants Tobias and Savage forced her to color. **(ECF No. 16, ¶¶ 13, 35, 37)**.

Visibly upset, M.T. pushed her coloring page off the desk to the floor. **(ECF No. 16, ¶ 35)**. At this point, it had been only nine days since Plaintiff reported Defendant Savage's repeated use of unwarranted physical force to Defendant Taylor. Empowered by Defendant Taylor's deliberate indifference to the prior uses of physical force on vulnerable M.T., Defendant Savage escalated

her use of force dramatically. Together with Defendant Tobias, Defendant Savage forcefully pushed M.T.'s back down, forcing her to the floor to make her pick up the paper. **(ECF No. 16, ¶¶ 31, 32, 35, 36, 87, 95 to 97)**.

The Amended Complaint also alleges how Defendant Taylor responded to this incident. Cheryl Smith ("Smith"), another aide assigned to the classroom, saw Defendant Tobias push M.T. toward the floor and Defendant Savage join in, and Smith, understandably upset, left the classroom and told Plaintiff what she had seen. **(ECF No. 16, ¶¶ 22, 36, 38)**. Plaintiff reported the incident to the counselor and to HCA's Human Resources Director. **(ECF No. 16, ¶¶ 21, 38)**. On October 13 and 14, 2023, M.T.'s father, desperate to ensure his special needs daughter was safe at school, asked the Special Programs Director in writing that M.T. be moved out of Defendant Savage's room at least temporarily. **(ECF No. 16, ¶ 39)**. The Special Programs Director replied, copying Defendant Taylor, that the plan was for M.T. to remain in her current classroom, and Defendant Taylor added that "[t]he other option is the local county schools." **(ECF No. 16, ¶ 39)**. Only after M.T.'s father insisted that she be kept safe until the accusations were investigated did the Special Programs Director agree, on October 15, 2023, to move M.T. to a different classroom. **(ECF No. 16, ¶ 40)**.

On October 15 and 16, 2023, Smith and Plaintiff each gave HCA a written statement. Smith's statement described what she had seen on October 6, 2023, and Plaintiff's described the two draggings, the book slamming, and what Smith had reported about M.T. being pushed to the floor over a coloring page. **(ECF No. 16, ¶ 41)**. Instead of acting on those statements, Defendant Taylor met with Smith on October 16 and 17, 2023 and asked her to revise her statement. Smith refused. **(ECF No. 16, ¶ 42)**. On October 19, 2023, Defendant Taylor seemingly punished Plaintiff for trying to keep her vulnerable daughter safe by placing her on administrative leave, barring her

from the campus except to use the car line, and ordering her to have no contact with HCA's employees, students, board members, or parents. **(ECF No. 16, ¶¶ 48 to 51)**.

In similar fashion, on or about October 23, 2023, Defendant Taylor asked Smith to sign a "Settlement Agreement and General Release" that would have released her claims against HCA relating to her employment and required her to keep its terms in the strictest confidence. Just as she did with the request that she revise her statement, Smith declined to sign the release. **(ECF No. 16, ¶¶ 43, 44, 46)**. On October 23, 2023, Defendant Taylor terminated Smith's employment by a letter that described what Smith had seen as teachers using "hand over hand" and "a physical cue of a hand on a student's back," and that faulted Smith for telling M.T.'s mother what she had seen rather than taking it up HCA's chain of command. **(ECF No. 16, ¶ 47)**. No HCA employee other than Plaintiff and Smith was placed on leave or separated, and Defendants Savage and Tobias remained in the classroom responsible for the school's most vulnerable children. **(ECF No. 16, ¶ 52)**.

Defendant Taylor filed her Motion to Dismiss on November 16, 2026, without a separate memorandum, and she incorporates Defendants Ivey Savage and Tanya Tobias's Joint Motion to Dismiss With Prejudice and its supporting memorandum (together, "Savage and Tobias's Motion to Dismiss"). **(ECF Nos. 32, 32-1; ECF No. 38 at 1 n.1, 3)**. She and Defendant HCA answered the Amended Complaint the same day, and their Answer admits that Defendant Taylor was HCA's Executive Director and school leader in 2023. **(ECF No. 39, ¶ 7)**.

## LEGAL STANDARD

To survive a motion under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). The Court must "accept as true all of the factual allegations contained in the complaint"

and "draw all reasonable inferences in favor of the plaintiff." Owens v. Baltimore City State's Attorneys Office, 767 F.3d 379, 388 (4th Cir. 2014) (quoting E.I. du Pont de Nemours & Co. v. Kolon Industries, Inc., 637 F.3d 435, 440 (4th Cir. 2011)).

## ARGUMENT

### I. Defendant Taylor's Motion to Dismiss Rests on the Premise That Defendants Savage and Tobias Did Not Violate M.T.'s Constitutional Rights, and the Amended Complaint Alleges That They Did.

Defendant Taylor makes one argument on the merits. Relying on the elements of supervisory liability stated in Baynard v. Malone, 268 F.3d 228, 235 (4th Cir. 2001), she contends that because Defendants Savage and Tobias did not violate any constitutional right, Plaintiff cannot establish that Defendant Taylor had notice of an unreasonable risk of constitutional injury or that a causal link exists between her supervision and any constitutional injury. **(ECF No. 38 at 3)**. She offers no separate reason why the force alleged was constitutional and instead incorporates Savage and Tobias's Motion to Dismiss. **(ECF No. 38 at 1 n.1, 3)**.

Plaintiff has responded to those arguments in Plaintiff's Memorandum in Opposition to Savage and Tobias's Motion to Dismiss and incorporates that memorandum here. In brief, the Fourth Circuit held in Hall v. Tawney that the substantive due process inquiry in school corporal punishment cases is "whether the force applied caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience." 621 F.2d 607, 613 (4th Cir. 1980). It has since held that allegations that a coach deliberately and repeatedly instituted unprovoked beatings of a student, causing excruciating physical pain, inflammation, and traumatic stress disorders, stated such a claim and defeated qualified immunity on a motion to dismiss. Meeker v. Edmundson, 415 F.3d 317, 321,

323 to 25 (4th Cir. 2005). The Amended Complaint alleges that Defendant Savage twice dragged a nonverbal child across the floor when there was no emergency and no threat; that Defendants Savage and Tobias pushed M.T.'s back down and forced her to the floor over a coloring page eight days after Defendant Savage was told not to put her hands on her; that the force used on October 6, 2023 was intended to hurt the child; and that M.T. suffered physical pain, regression in her behavior, toileting, and acquired skills, and lasting emotional harm. **(ECF No. 16, ¶¶ 23 to 28, 32, 35 to 37, 72, 85, 86, 90)**. Those allegations state a claim that Defendants Savage and Tobias violated M.T.'s right to bodily security.

Although the Court need not look beyond the Amended Complaint, Defendant Taylor's own pleading is consistent with that conclusion. She and Defendant HCA admit the allegations that before each of the two draggings M.T.'s behavior did not create an emergency and M.T. did not pose a threat of harm to anyone. **(ECF No. 16, ¶¶ 25, 28; ECF No. 39, ¶¶ 19, 21)**. Whether it was proportionate to drag a child with Down syndrome across the floor when, by Defendant Taylor's own admission, there was no emergency and no threat, is not a question that can be resolved in her favor on the facts alleged.

## II. <u>The Amended Complaint Alleges Each Element of Supervisory Liability Against Defendant Taylor.</u>

Because Defendant Taylor argues only that there was no underlying constitutional violation, the Court need go no further. The Amended Complaint in any event alleges each element of supervisory liability, which "is not premised upon *respondeat superior* but upon 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" <u>Shaw v. Stroud</u>, 13 F.3d 791, 798 (4th Cir. 1994) (quoting <u>Slakan v. Porter</u>, 737 F.2d 368, 372 to 73 (4th Cir. 1984)). A plaintiff must show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Id. at 799; accord Baynard, 268 F.3d at 235. The Fourth Circuit has noted that the issue of supervisory liability "is ordinarily one of fact, not law." Shaw, 13 F.3d at 799.

**A. Defendant Taylor knew that Defendant Savage was using physical force on M.T. that posed a pervasive and unreasonable risk of constitutional injury.**

The first element requires actual or constructive knowledge of conduct that is widespread or that at least "has been used on several different occasions" and that poses an unreasonable risk of constitutional injury. Shaw, 13 F.3d at 799. By September 27, 2023, Defendant Savage had dragged M.T. across the floor on two occasions and had slammed a book in front of her to scare her on a third. **(ECF No. 16, ¶¶ 23, 26, 27)**. On that date M.T.'s mother, who worked in the classroom, told Defendant Taylor directly that Defendant Savage "had been pulling M.T." **(ECF No. 16, ¶¶ 22, 31)**. That report gave Defendant Taylor actual knowledge that a teacher had been using physical force on a special needs child who could not speak for herself. **(ECF No. 16, ¶¶ 19, 31)**. The Amended Complaint also supports the inference that Defendant Taylor knew more, because thirteen days earlier Plaintiff had reported the second dragging to four HCA administrators and staff members, and Defendant Taylor is alleged to be the official with final authority over HCA's policy on responding to reports that a student has been mistreated. **(ECF No. 16, ¶¶ 11, 29)**. It is reasonable to infer at the pleading stage that a report of that kind reached her, and the Amended Complaint alleges that she had both actual and constructive knowledge. **(ECF No. 16, ¶¶ 33, 94)**.

**B. Defendant Taylor's decision to take no action shows deliberate indifference to or tacit authorization of Defendant Savage's use of force.**

A plaintiff may establish deliberate indifference by demonstrating a supervisor's "continued inaction in the face of documented widespread abuses." Shaw, 13 F.3d at 799 (quoting Slakan, 737 F.2d at 373). The standard is demanding, and "a supervisory official who responds reasonably to a known risk is not deliberately indifferent even if the harm is not averted." Baynard, 268 F.3d at 236. But a supervisor's failure to respond can meet the standard. In Baynard, the Fourth Circuit upheld a jury's finding of deliberate indifference against a principal who failed to respond to mounting evidence of a teacher's potential misconduct and whose efforts at monitoring the teacher the court described as "desultory." Id. In Shaw, the court held that evidence that a supervisor responded callously to complaints about his subordinate's use of force raised a genuine issue of fact on deliberate indifference. 13 F.3d at 800.

The Amended Complaint alleges that Defendant Taylor took no action, although she had the authority to remove Defendant Savage, reassign M.T. to a different classroom, investigate, discipline, retrain, or monitor Defendant Savage, and direct the adults in the classroom not to use force on M.T., and that M.T. was placed back in Defendant Savage's classroom nine days later. **(ECF No. 16, ¶¶ 31, 34, 93)**. Taking no action at all in response to a mother's report that a teacher has been routinely and unjustifiably dragging her nonverbal child across the floor is not a reasonable response to a known risk. What Defendant Taylor did after October 6, 2023 supports the inference that her earlier inaction reflected tacit authorization and not oversight. **(ECF No. 16, ¶ 98)**. She coldly pointed M.T.'s father to the local county schools when he asked that M.T. be moved for her safety, she asked the aide who reported the force to revise her statement and then terminated her when she refused, and she placed M.T.'s mother on leave barring her from everything but the car line while Defendants Savage and Tobias stayed in the classroom

responsible for the school's most vulnerable children. **(ECF No. 16, ¶¶ 39, 42, 47, 50 to 52)**. A supervisor who responds to a report of force on a non-threatening special needs child by describing the force as an accepted technique and by removing the people who reported it has, on a fair reading of the Amended Complaint, tacitly authorized the conduct.

### C. Defendant Taylor's inaction was an affirmative cause of the force used on M.T. nine days later in the same classroom.

Causation in a supervisory liability claim "encompasses cause in fact and proximate cause," and proof of it may be "supplied by [the] tort principle that holds a person liable for the natural consequences of his actions." Shaw, 13 F.3d at 799 (alteration in original) (quoting Slakan, 737 F.2d at 376). In Shaw, the Fourth Circuit held the evidence of causation sufficient to withstand summary judgment even though the supervisor had transferred fifteen months before the incident in which the plaintiffs' decedent died, because the death was a natural and foreseeable consequence of the supervisor's failure to address his subordinate's known conduct. Id. at 800. The causal chain alleged here is far shorter. Nine days after Defendant Taylor was told that Defendant Savage had been pulling M.T. and took no action, Defendant Savage used force on M.T. again, in the same classroom, together with an aide who was also under Defendant Taylor's supervisory authority, and the Amended Complaint alleges that the force would not have occurred had Defendant Taylor removed Defendant Savage, removed M.T., or imposed and enforced a prohibition on force. **(ECF No. 16, ¶¶ 31, 34 to 36, 93, 96, 97)**. Defendant Taylor's only argument on this element is that there was no constitutional injury to cause, which fails for the reasons given in Section I. **(ECF No. 38 at 3)**. The Amended Complaint therefore alleges each element of supervisory liability.

## III. <u>**Defendant Taylor Is Not Entitled to Dismissal on Qualified Immunity Because Supervisory Liability and the Unlawfulness of the Force She Knew Defendant Savage Was Using Were Both Clearly Established in 2023.**</u>

Defendant Taylor asserts qualified immunity "for the same reasons as argued by Defendants Tobias and Savage." **(ECF No. 38 at 3)**. Those reasons fail for the reasons stated in Section III of Plaintiff's Memorandum in Opposition to Savage and Tobias's Motion to Dismiss, which Plaintiff incorporates here. The Fourth Circuit has also identified what must be clearly established before a supervisor is denied qualified immunity. In <u>Shaw</u>, where Stroud was the supervisor and Morris was the subordinate officer, the court stated that the plaintiffs had to show that

> (1) it was "clearly established" at the time of Morris' conduct that Stroud could be held liable under § 1983 for constitutional violations committed by Morris; (2) it was "clearly established" at the time Stroud was supervising Morris that the degree of force that Stroud knew that Morris was using against arrestees was unconstitutional; (3) a reasonable person in Stroud's position would have known that his actions were unlawful.

13 F.3d at 801. Each showing is met on the facts alleged here. First, the Fourth Circuit held in 1984 "that a supervisor who was deliberately indifferent in the face of a pervasive and unreasonable risk of harm could be held liable under § 1983 where the inaction bore an affirmative causal link to the harm suffered by the plaintiff," <u>id.</u> at 802 (citing <u>Slakan</u>, 737 F.2d at 377), and it applied that rule to a school principal in 2001. <u>Baynard</u>, 268 F.3d at 235 to 36. Second, Defendant Taylor knew that Defendant Savage had been using physical force on a nonverbal child with Down syndrome, **(ECF No. 16, ¶¶ 1, 19, 31, 94)**, and the unlawfulness of malicious and disproportionate force by a school employee against a student has been clearly established in this circuit since <u>Hall</u> was decided in 1980. <u>Meeker</u>, 415 F.3d at 323 to 24. Third, the court in <u>Shaw</u> concluded that, assuming the supervisor received the complaints about his subordinate, he "could not have considered his inaction lawful." 13 F.3d at 802. The same is true of a school leader who is told that

a teacher has been pulling a nonverbal child across the floor and does nothing. **(ECF No. 16, ¶¶ 31, 99)**.

The Ninth Circuit reached the same conclusion on similar allegations. It affirmed the denial of qualified immunity on a motion to dismiss to a principal and other administrators who were alleged to have known of a special education teacher's physical abuse of a nonverbal four-year-old and to have failed to act, reasoning that a reasonable special education official would know that the failure to address such conduct is a ground for liability. Preschooler II v. Clark County School Board of Trustees, 479 F.3d 1175, 1178 to 79, 1182 to 83 (9th Cir. 2007). At a minimum, whether Defendant Taylor's response was reasonable in light of what she knew depends on facts that cannot be resolved in her favor on the pleadings. Defendant Taylor is therefore not entitled to dismissal on qualified immunity.

**IV. Any Dismissal Should Be Without Prejudice and With Leave to Amend.**

Defendant Taylor asks that the Fourth Cause of Action be dismissed with prejudice. **(ECF No. 38 at 1, 4)**. For the reasons stated in Section IV of Plaintiff's Memorandum in Opposition to Savage and Tobias's Motion to Dismiss, a dismissal with prejudice would not be warranted even if the Court found the Amended Complaint deficient in some respect. The Fourth Circuit held in Ostrzenski v. Seigel that, even if the complaint in that case was inadequate, the district court should not have dismissed it with prejudice without permitting the plaintiff an opportunity to amend, 177 F.3d 245, 252 to 53 (4th Cir. 1999), and "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Plaintiff therefore respectfully requests that any dismissal be without prejudice and with leave to amend.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant Ann Marie Taylor's Motion to Dismiss Plaintiff's Fourth Cause of Action. In the alternative, if the Court finds the Fourth Cause of Action deficient in any respect, Plaintiff requests that any dismissal be without prejudice and with leave to amend.

Respectfully submitted,

**PRACHT INJURY LAWYERS, LLP**

*s/Kyle L. Brady*
J. Christopher Pracht, V
Federal ID: 10538
chris@864law.com
Kyle L. Brady
Federal ID: 13591
kyle@864law.com
1000 North Main Street
Anderson, South Carolina 29621
Telephone: (864) 226-7222
Fax: (864) 226-7224
***Attorneys for Plaintiff***

Anderson, South Carolina
November 25, 2026